## HUNTSMAN BROTHERS, INC., v. GROCERS BAKING COMPANY, et al.

Eastern Section. ———— —, ——.

Miller & DePew, of Johnson City, for plaintiff in error.
Herbert Nace, of Johnson City, for defendant in error.

PORTRUM, J. These suits grew out of an automobile accident. The salesman of Huntsman Brothers, while driving the company's car, on the company's mission, attempted to pass an on-coming car, upon the highway, in the nighttime, and was unable to see a parked truck upon the edge of the highway and, as a consequence, he ran into the truck at the time the two moving cars attempted to pass. The truck was owned and used by the Grocers Baking Company and was under the charge of its driver.

Each company sued the other for damages growing out of the accident, before a justice of the peace. The cases were carried to the circuit court and tried together; Huntsman Brothers, Inc., was successful and recovered a judgment. The Grocers Baking Company has appealed.

The drivers of the car and truck were the principal witnesses; their testimony was reduced to a narrative form and quotations therefrom will supple a statement of the facts.

The witness, Henry Peterson, salesman for Huntsman Brothers, states:

"About eight o'clock on the evening of December 7, 1929, I was driving from Piney Flats toward Johnson City, returning from my day's work for Huntsman Brothers, in the Chevrolet coupe belonging to Huntsman Brothers Company, Inc., a corporation organized and operating under the laws of the State of Tennessee, with its principal place of business in Bristol, Tennessee. A short distance on this side of Piney Flats a collision occurred between the Chevrolet coupe which I was driving and the truck which belonged to the Grocers Baking Company and was in charge of its driver, G. H. Eads. About two hundred yards from the place of the collision I crossed the top of a hill and travelled a straight stretch of road all the way on a slight downward slope, to the place where the collision occurred. My headlights were both in good condition and shone about one hundred yards ahead of the car within which distance I could see any object on the highway. When I was about half the distance from the top of the slope to where it developed the Grocers Baking Company truck was standing, a car appeared coming from the opposite direction and its lights of course shone into my eyes, more and more as it came closer. Just about the time that the car coming toward me and my car were about to pass I saw a large object just a few feet ahead in the highway, but inasmuch as the car coming toward me was just to my left on the highway I could only turn part way across the road to the left. After turning as far as I could to my left without hitting the car which was passing me, the right side of my car struck the left side of the object which turned out to be the Grocers Baking Company truck. As a result of this collision my car was damaged.

"The truck of the Grocers Baking Company had no lighted tail-light of any description at the time I was driving from the top of the slope to the place the collision occurred. After the accident the driver of the truck, Mr. Eads, and I examined the truck and I asked him where his tail-light was but he said that he didn't know, that he had expected some one to run into his truck ever since it had been standing there. Mr. Eads further told me that he was driving for the Grocers Baking Company to which concern his truck belonged, that he had been somewhere delivering bread but had had trouble all the way back from Bristol, that this was the third time he had stopped and that he had put the jack under his left rear wheel three times since he had left Bristol. The jack was under the left rear axle of his truck at the time the accident occurred but the car was not pushed off the jack by the collision. The tail-light attachment on the truck, in which there was no light, was just to the rear of the place where the jack had been placed.

"At the time of the collision the truck was standing so that about three and one-half of its width covered the highway, the

asphalt portion of the highway at this point being about sixteen and one-half feet in width and dirt shoulders on each side about two and one-half feet. I am positive that the truck had no tail-light before the collision and I know that if there had been one burning I would have seen it."

The witness, G. H. Eads, driver of the truck, says:

"That he was coming from Bluff City to Johnson City on the day above mentioned on the highway between Bluff City and Johnson City about a quarter of eight and his left rear tire became flat; that he pulled to the right side of the road as far as he could go in safety, being about 6 inches from a ditch along the side of the road; that he proceeded to the rear of the car and jacked up the left rear wheel of the car in order to change the tire; that he found out that he did not have an extra tire with him and he sent word to Johnson City to send out a tire; that he waited in the seat of the truck for help from Johnson City; that his head lights were burning but he is not positive about the tail light; that said highway is of macadam construction, being $16\frac{1}{2}$ feet in width and having a gravel shoulder of approximately 3 feet, leaving about 23 feet driving space; that his car covered approximately 6 feet of the surface, and that this left approximately 17 feet of the road open; that while he was sitting in the car the Peterson car ran right into him or his truck; that he made no statement to Peterson in regard to what Peterson testified to the effect that he knew some one was going to hit or run into him."

The main contention of the plaintiff-in-error is that there is no liability on its part because the driver of the car was under the duty to keep his car under control at all times so as to be able to stop his car within the radius of his lights and prevent an accident. And since he was remiss in this duty there was no ground for complaint. In support of this contention the following authorities are cited: West Construction Co. v. White, 130 Tenn., 520, 172 S. W., 301; Knoxville Ry. & Light Co. v. VanGilder, 132 Tenn., 487, 178 S. W. 1117; Cleveland v. Clark, 6 Tenn. App., 364; Vartanian Tenn. Law of Automobiles, 55, 56.

In the West Construction Co. case the driver of a car ran into an unlighted concrete mixer parked on the wrong side of the street in Chattanooga, and the court said:

"It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely upon the lights of his machine at a rate faster than enabled him to stop or avoid an obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of an obstruction."

In the VanGilder case, the driver was driving around a curve in the road on the inside of the curve and ran into an unlighted

obstruction, caused by placing and leaving barrels in the road way. The court said:

"The fact that the bright lights from a large automobile were shining in the face of VanGilder, and that he was turning a curve where his own light did not shine directly in the way his machine was going around the curve, was a greater reason that he should have stopped or slowed up his machine, as to avoid running into a place of danger."

In the Clark case the driver was operating his car through a fog, when his lights shone only a distance of ten or twelve feet, when he ran into an unlighted car, parked on the wrong side of the street. The court held the driver guilty of contributory negligence.

In each of these cases, the driver was not using that caution which the ordinary prudent man uses under like circumstances for his own protection.

In the case at bar the drivers of the moving cars followed a course that all men pursue. They attempted to pass each other without stopping, which made it necessary for each to drive into a dark hole as the cars came along-side of each other. So far as visibility is concerned, the lights of each car diminished the length of the radius of the lights of the other to almost the vanishing point at the place of passing. It is this natural law that makes it impossible to see the dark heavenly bodies, or dark stars, that give off no light.

It is not a question of the driver being blinded by the lights of the approaching car; he was not blinded, but because of a natural law he was unable to see, and by necessity had to drive into a dark place, or stop his car. The ordinary prudent person does not stop under such circumstances; he expects others who find themselves in this place of danger to have regard for their own safety and display a light of warning.

There is an objection to the testimony of the mechanic, who estimated the non-repairable damage to the car, because he did not see the car before the accident. Counsel by cross-examination may have been able to show that the witness could not estimate the non-repairable damage without a prior inspection, but this was not done.

Judgment of the lower court affirmed with costs.

Snodgrass and Thompson, JJ., concur.