INTER-CITY TRUCKING CO. *v.* DANIELS.

(*Jackson,* April Term, 1943.)

Opinion filed March 4, 1944.

JAMES W. WRAPE and CHARLES HUDSON, both of Memphis, for plaintiff.

JOHN R. COATES, of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Before daylight on the morning of January 10th, 1942, a large truck of the Inter-City Company, proceeding north from Memphis on Highway 51, stalled about one mile south of Millington. It stood partly on the concrete and

partly on the shoulder of the roadway. Something more than an hour and a half later, still before daylight, a smaller truck, driven by Onyx Daniels, crashed into the rear of this standing truck. Daniels was so severely injured that he died later that day in a hospital in Memphis. This action was brought by his widow as administratrix, for the benefit of herself and three minor children, and resulted in a jury verdict of $8,500. A remittitur of $2,500 was accepted and judgment was entered for $6,000, which was affirmed by the Court of Appeals. This Court granted *certiorari* and argument has been heard.

Material evidence supports the finding concurred in by the lower Courts that the driver of the defendant's truck failed to observe the legislative requirement brought into Michie's Code, 1941 Supplement, as Section 2695(A) (c), that, under conditions here appearing, three lighted flares, or pot torches, shall be placed on the roadway, one in the center of the line of traffic, not less than 40 paces, or approximately 100 feet, from the disabled vehicle in the direction of approaching traffic; one not less than 40 paces, or approximately 100 feet, in the opposite direction, and one at the traffic, or outer side of the truck, approximately 10 feet to the rearward or forward.

The statute provides that these flares (liquid-burning pot torches) "shall be capable of being seen and distinguished at a distance of 500 feet, under normal atmospheric conditions," and shall be substantially constructed and capable of burning "in any air velocities from zero to 40 miles an hour."

This legislation was doubtless enacted to meet an urgent demand based on experience for the better pro-

tection of travelers on the highways. The ordinary lantern lights attached to vehicles of the truck class had been proven inadequate. They vary greatly in visibility, being often dimmed by dust or frost, and range of rays. And, too, it is difficult always to tell whether these "tail" lights are moving with a vehicle or stationary. It was the purpose to reduce the menace to lighter traffic on the higways, and to life and limb, by this requirement for the display of stationary signals of such conspicuous character that they could not fail to be seen in ample time to avert collisions, under however bad atmospheric conditions.

The violation of this statute was negligence *per se*. The driver of an approaching vehicle had a right to assume that the law was being observed and until this glaring and inescapable warning appeared might proceed on the assumption that no standing obstruction of this character was ahead. The failure to place these protective signals, under circumstances which disclose no reasonable excuse for such neglect, would seem to bring this actionable negligence *per se* within the definition of gross negligence, as charged in the declaration in this case, which precludes reliance upon the defensive plea of contributory negligence, relied on by the defendant.

In *Stagner* v. *Craig,* 159 Tenn., 511, 517, 19 S. W. (2d) 234, 236, since approved and followed in *Consolidated Coach Co.* v. *McCord,* 171 Tenn., 253 at page 258, 102 S. W. (2d), 53, citing other cases, "gross" negligence was defined as, "such entire want of care as would raise a presumption of a conscious indifference to consequences." If one knowingly, consciously, violates a duty imposed upon him to take measures prescribed to protect the lives of others, he is guilty of more than a mere neg-

lect to exercise ordinary care. As was said in the *Stagner Case,* "This, of course, means more than, on the one hand, a want of ordinary care—a common definition of negligence. And yet, it does not cross the border line of studied or deliberate intent to do the specific injury. The mental attitude is one of indifference to injurious consequences, conscious recklessness of the rights of others. Such conduct may well be characterized as wanton. Bouvier defines wanton negligence as: 'A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another. *Hazle* v. [*Southern Pac.*] *Co.* (C. C.), 173 F., 431. [2 Bouv. Law Dict., Rawle's Third Revision, p. 3418].'"

We have applied this distinction in passing on criminal liability in traffic cases. The *McCord Case* above mentioned was a violation of the highway traffic statute in driving recklessly through a thickly settled section in wanton disregard of the safety of others. In the recent case of *Potter* v. *State,* 174 Tenn., 118, at page 127, 124 S. W. (2d), 232, 236, a prosecution for manslaughter, distinguishing that conscious negligence which entails criminal liability, and which is of the wanton, or gross class above mentioned, it was said:

"The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others. For example, one who drives over the crest of a hill on the wrong side of the road, or who drives out from behind a line of congested traffic into the face of near approaching ve-

hicles (as in the recently reported case of *Reed* v. *State*, 172 Tenn., 73, 110 S. W. (2d), 308), can hardly be acquitted of criminal negligence on his plea of inadvertence. The demand for diligence and caution is too imperative under such conditions to be so excused. In this class of cases the defendant must be held to have knowingly violated the law, and must be held to the consequences, whether foreseen or not. Such cases call for application of a rule of unrebuttable presumption of conscious indifference.''

To which, in this connection, it may be added, that in a tort action for damages liability is not limited to injuries resulting which were foreseen by the tortfeasor, but—adopting, in substance, an apt phrase employed by learned English Judges—extends to whatever injuries were within the reasonable range of the risk created by the negligent act, or omission of the defendant.

The defense here relied on by petitioner is narrowed to that of contributory negligence on the part of the deceased driver of the smaller log trailer truck which struck, with fatal results to the driver, the rear of the standing truck of the defendant, and questions arising under this defense, chiefly the admissibility of certain testimony. The actionable negligence of the defendant driver in failing to observe the statutory requirements above noted is conclusively proven by the testimony of all witnesses, except perhaps his own, and was, as we understand, conceded on the argument. Some witnesses say they saw flares either before, or in the rear of the truck before the accident. Some saw none. But we find no witness who testifies that they were at the required distance of 100 feet, or at a distance approximate thereto. The element of distance is not only explicitly prescribed

by the statute, but is a requisite clearly demanded by the manifest necessities of such a situation. That this negligence was the proximate cause of this accident, indeed the direct cause, we think, after a careful review of the entire record, there can be no doubt. It cannot be conceived that this accident would have happened if a blazing pot flare had been burning "approximately 100 feet" behind this stalled truck.

We first consider whether or not, on the facts of this case, the defendant's negligence is of that ordinary care class which admits of the defense of contributory negligence, which, if established and proximate, bars a recovery, or falls within that gross or wanton class above defined which precludes reliance by the defendant thereon. We cannot escape the conclusion that the driver of defendant's truck was guilty of conscious neglect of his statutory, as well as reasonable obligation to protect approaching traffic and the lives of occupants of vehicles approaching from the rear.

The morning was dark and cold. Numerous witnesses testify that the atmospheric conditions were bad; that frost formed on the windshields. One traveler testified that it was necessary constantly to use a handkerchief in wiping the windshield, so as to see ahead. Another that he used ammonia and that without it he would have been unable to drive. Others, that they had and used other defrosting devices attached to their cars, and thus only were able to see ahead. One or more witnesses say it was "foggy," and the roadway was slippery. All of this was known to the defendant's driver, when his truck stalled on the highway about four o'clock on this morning of January 10th. He says the temperature was about ten degrees above zero. He says that he first placed

fuses, which burn only fifteen or twenty minutes, both before and behind his truck, each at a distance of "approximately 100 feet" from the truck. We think it significant that he adopts the exact language of the statute, it thus appearing that he knew that the statute required that the lights be placed at this distance. He says that he then went to the Wonder City Cafe on the outskirts of Millington, slightly less than a mile distant, to telephone for help. He says he shortly returned. One of the fuses had gone out. He testifies that he then placed the pot flares required by law where the fuses had been, at the same distance from the truck front and rear, "approximately 100 feet;" also a flare on the left, or traffic, side of the truck; that he then returned to the Millington neighborhood and left the truck unattended and continued efforts to secure assistance; that about one hour and a half later, his attention was attracted to excitement in and about the Wonder Cafe, due to a report that had been brought in of the collision with his truck; that he thereupon returned to his truck, about 5:45, and found that the small truck driven by deceased had struck his truck in the rear and that deceased was crushed and unconscious in the driver's seat.

As before stated, none of the many witnesses who claimed to have seen any flares at all placed them more than one-half the required distance of approximately 100 feet from the truck. Most of them put the distance at some 10 to 15 feet. A number say they saw no flares. If placed at all, they had gone out. It occurs to us that, aside from the failure to place the flares as the law requires, this driver, on his own statement, was guilty of serious neglect in leaving this stalled truck on the highway wholly unattended for fully an hour and

a half. As said, it was bitterly cold. The wind was blowing. He was on notice that the lights or flares he says he had placed were liable to be extinguished; that his unguarded truck was an obstruction pregnant with possibilities of disaster; and yet he remained away, doubtless seeking comfort and protection from the cold in the places which he visited during this time.

While without causal connection with the accident, it is significant that officers testify that this driver was without a driver's license, and was arrested by them for this traffic law violation, a further indication of his conscious disregard of statutory requirements.

In view of the facts which we have thus summarized, it is inescapable that this driver, consciously and with full appreciation of the possible dire consequences, neglected to put out these warning signals as he knew the law required, and consciously neglected to see that such as he did place were kept burning, or to take any other precautions to avoid a collision which, under all the conditions, was so apparently likely.

The facts bring the case directly within the rule to which we have referred of conscious disregard of the rights and safety of others, a class of negligence defined as gross and wanton, which deprives the defendant guilty thereof of the right to rely upon the plaintiff's contributory negligence. Having reached this conclusion, it becomes perhaps unnecessary to discuss other questions raised and elaborately argued on the briefs arising under the defense relied on of contributory negligence.

The writ was granted primarily in order that argument might be heard and full consideration given the question of the admissibility of certain evidence admitted by the trial Judge, to wit, the testimony of witnesses who as-

sisted in extricating the deceased from the wreck and placing him in the ambulance and accompanied him to the hospital as to statements made by the deceased reflecting upon how the accident occurred.

The theory of the plaintiff was that the deceased was following a car, which, being ahead of him and between him and the stalled truck, obscured his vision of the obstruction. Also, that the vision of the deceased was further impaired and obscured by the atmospheric conditions and the frost upon the windshield heretofore mentioned, and that, while the driver of the car in front saw the truck in time to swing to the left and miss it, he was too late and failed in an attempt to do likewise.

Now, it was to support this theory of the plaintiff that the statements of this partially unconscious suffering and dying man were sought to be introduced to the effect that he could not see the lights, that the car in front got by, but he could not. It was around the admissibility of this testimony as a part of the *res gestae* that an interesting contest was waged. In response to our suggestion, able counsel on both sides have presented the Court with exhaustive additional briefs dealing with the law of this phase of the case. However, upon a thorough review of the entire record, we have found it unnecessary to give consideration to this phase of the argument. Even if the defense of contributory negligence, out of which this debatable issue arises, was available at all to the defendant, we are persuaded that this questioned testimony as to the statements of the deceased is not essential to sustain the theory of the plaintiff that the deceased was following another car and was thus misled, for the reason that we think the facts and circumstances otherwise proven sustain this theory without the aid of this disputed testimony as to statements of the deceased.

The position in which the truck driven by the deceased was found, its right front wedged against the left rear end of the large truck and the wheels turned toward the left, is an undisputed physical fact indicating that at the moment of the collision the deceased was endeavoring to turn out into the highway and get around the stalled truck. There was also testimony that two cars had passed the truck of the deceased a short distance down the highway south of the scene of the accident, shortly before it occurred. This testimony showed that the second of these cars, after following the truck of the deceased for about a mile, both vehicles proceeding at from 35 to 40 miles per hour, finally ran around the truck of the deceased and proceeded ahead of it north. We think the record indicates that this car passed around the truck of the deceased very shortly before it reached and passed the stalled truck, thus placing the truck of the deceased on the highway immediately following this car. The driver of this car testified that within ''two or three minutes'' after he reached the Wonder Cafe, less than a mile beyond the scene of the accident, he was informed that it had happened. It is not unnatural that he was not aware of the collision, since he was moving rapidly in a closed car on ahead of the truck of the deceased. The deduction that the deceased was following this car that had just before passed him is consistent with a well known practice of following a car on the road ahead, when visibility is impaired by fog or frosted windshields. The tail lights of a car moving just ahead offer an assurance that the way is clear. The foregoing circumstances, taken together, satisfy us that the deceased was following a car ahead, which obscured his vision of the defendant's truck. These conditions im-

pairing vision ahead take the case out of the rule relied on for defendant announced in *West Const. Co.* v. *White*, 130 Tenn., 520, 172 S. W., 301.

But while, in deference to the diligence and earnestness of counsel, we have commented as above, our holding is, for the reasons heretofore stated, that on the facts of the instant case the defense of contributory negligence is not available to the defendant.

■ The verdict and the *remittitur* requirement in this case, awarding a recovery so limited in amount for injuries so painful, resulting in the death of a young and vigorous man, 32 years of age, leaving a widow and three dependent children, indicates a mitigation of the damages because of a finding of some negligence, remotely contributory to the accident, while finding that the plain and positive negligence of the defendant was the proximate cause. Even if contributory negligence in any degree appeared, and could be considered at all, we agree with the Court of Appeals that the result reached is well supported by the evidence as a whole. The judgment of the Court of Appeals is affirmed.