## McCONNELL v. JONES et al.

ALLEN v. JONES et al. (two cases).—228 S. W. (2d) 117.

Middle Section.   December 9, 1949.

Petition for Certiorari denied by Supreme Court, February 17, 1950.

Ben Kingree, Jr., and Edwin T. Nance, both of Shelbyville, Thurman Thompson and Jones & Wallace, of Lewisburg, for plaintiffs in error.

Bass, Berry & Sims, of Nashville, McLane & Craig, of Lewisburg, for defendants in error.

FELTS, J. John H. Allen and his brother-in-law George A. McConnell were injured, and his thirteen-year-old son Charles Houston Allen was killed, when his automobile crashed into an unlighted truck standing on the highway. The truck was owned by Dr. J. M. Jones and in charge of his employee Tim W. Crane. These suits were brought against Dr. Jones as master and

Crane as his servant, charging them with causing the injuries and death by gross and wanton negligence, as set out in four counts in each case.

The cases were tried together and resulted in verdicts and judgments for plaintiffs: $350 for McConnell's injuries, $2,150 for injuries to Allen's person and damages to his car, and $5,000 for wrongful death of his son. Dr. Jones and Crane appealed in error and insist that verdicts should have been directed for them upon these grounds: (1) that the uncontradicted evidence showed that the proximate cause of the accident was the negligence of McConnell, driver of the car; and (2) that his proximate contributory negligence barred the first two suits and also the third suit, to the extent of Allen's interest as beneficiary in the recovery sought.

Evidence for plaintiffs was that the accident occurred about 5:15 p.m. November 20, 1947, on State Highway No. 11, Horton Memorial Highway, some five miles north of Lewisburg. Allen, his son, and his brother-in-law McConnell were going in his car, a Plymouth Sedan, from Nashville to Lewisburg, McConnell driving and the little boy sitting on the front seat between them. This highway was a main thoroughfare from Nashville to Lewisburg and points south. A section of it north of Lewisburg had recently been widened, making the paved surface 24 feet wide with dirt shoulders on both sides.

There were a number of material conflicts in the evidence. Evidence for defendants was that a point some 900 feet north of the place of the accident, and on the right side of the highway as the automobile approached, there was a large sign lighted by a "smudge pot" warning travelers that the road was under construction and travel was at their own risk. Evidence for plaintiffs was

that there was no such sign or light there, no work in progress, the paving had been completed, and the highway fully opened for traffic. It was undisputed that there was considerable traffic at the time and place of the accident.

Another conflict was as to whether it had got dark at the time of the accident, about 5:15 p.m. Dr. Jones and Crane both said it was still daylight—light enough, Crane said, to see automobiles coming without lights half a mile away; and both of them said it did not get dark enough to need lights until some twenty minutes after the accident. But evidence for plaintiffs was that it had been a cloudy, "murky" day and had got dark some time before the accident—dark enough to need lights when they reached College Grove, about half way from Nashville to Lewisburg; and other passing vehicles had their lights on before and at the time of the accident.

As has been stated, the truck involved was owned by Dr. Jones and registered in his name. He was a veterinarian and was engaged in raising walking horses. He owned two farms which he used in this business, one of them being located on the Horton Highway a few miles north of Lewisburg and the other on beyond or south of Lewisburg. He had had Crane in his employ since March, 1947, and it was part of the duties of Crane's employment to operate this truck on the highways between Dr. Jones' farms in his business of raising horses. The truck was an old model A Ford with a dump body. It had no light in front or on the rear, and was not even wired for lights. Crane was a sixteen-year-old boy, and had no driver's license.

Evidence for defendants was that Crane had been operating this truck in Dr. Jones' business, hauling among

other things sawdust to put in his barns for his horses. He would get the sawdust at a sawmill near Farmington, some two and one-half miles from one of Dr. Jones' farms. At noon on the day of the accident Dr. Jones told Crane to haul some new sawdust and put it in the barn. Crane left with the truck about 1:00 p.m., went to the sawmill, got a load of sawdust and put it in the barn.

Crane testified that he then decided to get another load of sawdust for his own use, to cover a muddy place at the door of the tenant house on Dr. Jones' farm where Crane, his mother, two sisters, and a brother were living. On his way to the sawmill the motor of the truck began "missing". He stopped at a store and called Dr. Jones on the telephone at his office. The doctor was not there, his secretary took the call, and later he came in and talked to Crane. Crane told the doctor he had "had a breakdown". The doctor asked what was the matter, Crane said he thought he had water in his carburetor. The doctor told him to drain the carburetor, and Crane said he had already done that. Then the doctor told him to leave the truck there, catch a ride home if he could, but if he could not the doctor would come and get him when the doctor got home.

Crane further testified that after waiting a while he got the motor started, drove on to the sawmill, loaded the truck with sawdust, and started back, passing a filling station but not stopping there. As he was driving south along the highway, the motor stopped again. He was unable to start it or to move the truck off the highway. Its right front wheel was off the edge of the pavement but the rear wheels were on the pavement, the truck covering, as some of the witnesses for plaintiffs said, three-fourths of the right or south-bound traffic lane.

It remained there in that position for some twenty or thirty minutes before the accident. There was no light on it, no flare or fuses near it, nor anything to warn travelers that the truck was standing on the highway. Crane did say that though it was still daylight he stood behind the truck to direct traffic around it. But evidence for plaintiffs was that it was dark and he was not there, or at least they did not see him. As the automobile approached, its lights did not reveal the truck, because it was meeting another car, followed by a bus, with headlights shining and obstructing the view of plaintiffs, creating a "blind spot" so they could not see the truck in time to avoid running into it.

As has been stated, the declaration in each case charged defendants with gross and wanton negligence. The first count was for common law negligence in failing to put out any light or do anything to give warning of the danger from the obstruction of the highway by the truck. The second count charged violation of Code, Sec. 2690, which forbids one to park or leave a vehicle standing on the highway with less than fifteen feet of the pavement unobstructed. The third count was for violation of Code, Sec. 2695, subd. A(b) in operating the truck without any lights on it. The fourth count in each declaration was for failing to carry and display flares, etc., as required by Code, Sec. 2695, Subd. C(b).

In testing whether verdicts should have been directed for defendants we are bound to take as true the evidence for plaintiffs, discard all countervailing evidence, and take the strongest legitimate view of the evidence to uphold the verdicts. Lackey v. Metropolitan Life Ins. Co., 30 Tenn. App. 390, 397-398, 206 S. W. (2d) 806, 810, and cases there cited.

■ There is dispute as to whether Code, Sec. 2695, subd. C(b), requiring the carrying and the displaying of flares, etc., applies to a truck like that here involved. We need not determine this question. There is also doubt whether the evidence supports the second count based on section 2690 for leaving less than fifteen feet of the pavement unobstructed. But we think the first or common law count and the third count for operating the truck without lights in violation of section 2695, subd. A(b) are amply supported by the evidence; and the verdicts being general will be referred to these counts.

■ The evidence for plaintiffs warranted a finding that defendants were operating the truck without lights and left it standing in darkness on this busy highway with no light and with nothing to warn travelers of the obstruction. This created an imminent danger to the lives of travelers. The danger was of the same sort and would seem equally as imminent as that in the case of Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756, where the negligence was held to be gross and wanton.

■ Plaintiffs had no knowledge that this dangerous obstruction was standing in darkness on the highway ahead of them, and had no reason to anticipate it. In the absence of any light or warning of danger, they had a right to assume that there was none and that they could proceed in safety. The accident that befell them was within the reasonable range of the risk created by the negligence of defendants. Such an accident might reasonably have been expected to result from such negligence. The jury were warranted in finding that defendants' negligence was the legal or proximate cause of the accident and the injuries and death sued for. Inter-City

Trucking Co. v. Daniels, supra, 181 Tenn. 126, 132, 178 S. W. (2d) 756, 758.

██ ██ Contributory negligence was not a defense if defendants' negligence was gross and wanton, as we think it was. Inter-City Trucking Co. v. Daniels, supra. But if we are mistaken, if they could rely on this defense, we think it was a question for the jury. Evidence for plaintiffs was that their headlights were proper and were burning, and they were looking ahead, going about forty or forty-five miles per hour. This cannot be held negligent as a matter of law, since they had a right to suppose the highway was unobstructed and safe for such speed.

Defendants, however, insist that the failure of plaintiffs to see the obstruction and avoid it was negligence as a matter of law, within the rule laid down in West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301, and applied in other cases. That rule was that one must drive at a rate that will enable him to avoid an obstruction within the range of his headlights and that a greater rate is negligence as a matter of law. But that old rule has been modified, perhaps superseded, by later cases. Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665; Virginia Ave. Coal Co. v. Bailey, 185 Tenn. 242, 205 S. W. (2d) 11.

In the latter case plaintiff's automobile struck defendant's truck which had been parked double without lights, in violation of a city ordinance. It was held that the circumstances were such as to make the question of contributory negligence a question for the jury. The circumstances were the weather conditions, rain and snow, the blinding headlights of approaching cars, and the illegal parking of the truck without lights.

█ It is true that case involved the law of Virginia. But the rule in that state was found to be the same as the rule in Tennessee. The Court quoted with approval the statement of a Virginia case to the effect that many highways carry unbroken streams of traffic, cars much of the time flashing by almost every second, necessarily obscuring the vision of occupants of approaching cars; and that to hold that one must stop when approaching lights interfere would be to say that he must not travel at night. Stating, as we understand, the rule now applicable, the Court, through Mr. Justice Gailor, said: "It comes back to this: Drivers on highways must use reasonable care, and reasonable care is a flexible standard. Sometimes it means a high degree of care. Its presence or absence is pre-eminently a jury question. Boggs v. Plybon, 157 Va. 30, 160 S. E. 77." 185 Tenn. 246, 205 S. W. (2d) 12.

The circumstances in the cases before us were quite similar to those in the Bailey case. There were the weather conditions, cloudy and misty, and the darkness of night; the blinding headlights of approaching cars, making a "blind spot" so that plaintiffs could not see the truck as they approached it; and the illegal and unlighted obstruction, which they had no reason to anticipate. On the authority of the Bailey case, we think the circumstances in these cases made the question of contributory negligence a question for the jury.

Dr. Jones urges an additional ground for a directed verdict for himself. He contends that he was sued only upon the theory of *respondeat superior*, or as master for the act of Crane as his servant, and there was no evidence to take this issue to the jury; that the uncontradicted evidence showed that in the telephone con-

versation he specifically instructed Crane to leave the truck where it was; and that at the time of the accident Crane was operating the truck in violation of his instructions, outside the scope of his employment, and for Crane himself upon a mission of his own.

As we have seen, in that telephone conversation Dr. Jones first suggested a thing for Crane to do to get the motor started; on being told by Crane that he had already done that to no avail, Dr. Jones then told Crane to leave the truck there and if he could not catch a ride home the doctor would come for him later. This seemed to be not a mandatory instruction to leave the truck there at all events, but merely an advisory direction to leave it there only in the event he could not get the motor started.

At least Crane appears to have so understood it; for when he got the motor started he drove on to the mill, got another load of sawdust, and was on the way back to Dr. Jones' farm with this load when the accident happened. But even if it was a specific instruction and if Crane was disobeying it, this would not exonerate Dr. Jones if Crane was acting within the scope of his employment. A master is liable for the tortious acts of his servant, done in the course of his employment, although they may be done in disobedience of the master's instructions. Philadelphia & Reading R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Goff v. St. Bernard Coal Co., 174 Tenn. 558, 561-562, 129 S. W. (2d) 205-206; Pratt v. Duck, 28 Tenn. App. 502, 512, 191 S. W. (2d) 562, 566.

Evidence for plaintiffs made a case of *respondeat superior* against Dr. Jones. Proof of his ownership of the truck and its registration in his name created a presumption that Crane was acting in the course of his

employment as his servant, Code, Sec. 2701, 2702. And there was a case of circumstantial evidence of the master-servant relation arising from proof (1) that Jones owned the truck, (2) that it was being operated at the time by Crane, whom he had employed to operate it, and (3) that it was then being used under conditions resembling those which normally attended its use in Dr. Jones' business. Good v. Tennessee Coach Co., 30 Tenn. App. 575, 580-581, 209 S. W. (2d) 41, 44; McMahan v. Tucker, Tenn. App., 216 S. W. (2d) 356, 366, and cases there cited.

The only evidence offered to rebut this *prima facie* case of *respondeat superior* was the testimony of Dr. Jones himself and of his employee Crane. As we have seen, Crane testified that he had finished hauling sawdust for Dr. Jones with the first load and was hauling the second load for himself; and Dr. Jones testified more or less to the same effect. Both of them, however, stated to officers investigating the accident that Crane was hauling the sawdust for Dr. Jones; and both of them were contradicted in a number of other material matters.

So if the case for plaintiffs had rested upon the statutory presumption alone, the testimony of Dr. Jones and Crane would not have dispelled this presumption so as to require a directed verdict for Dr. Jones. This is so because their credibility as witnesses was a matter for the jury. Welch v. Young, 11 Tenn. App. 431; Southern Motors v. Morton, 25 Tenn. App. 204, 212-213, 154 S. W. (2d) 801; McMahan v. Tucker, Tenn. App. 216 S. W. (2d) 356.

Moreover, the case of circumstantial evidence of *respondeat superior* could not be dispelled by any amount of opposing evidence. It remained as evidence

and the only effect opposing evidence could have against it was merely to create a conflict of evidence and make an issue for the jury. Southern Motors, Inc. v. Morton, supra; Good v. Tennessee Coach Co., supra; McMahan v. Tucker, supra.

All of the assignments of error are overruled and the judgments of the circuit court are affirmed. The costs of the appeals in error are adjudged against defendants and the sureties upon the appeal bonds of Dr. Jones.

Howell and Hickerson, JJ., concur.