ARNOLD GARNER, PERCY WELLS, BOBBY MAN-
ESS, and ROBERT WAMBLE, d/b/a Wamble's
Trucking Co., Plaintiffs in Error, v. L. H. MAXWELL,
Defendant in Error.—360 S. W. (2d) 64.

Western Section of Jackson. December 20, 1961.

Rehearing Denied March 23, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

W. R. Menzies, Jr., Jackson, for plaintiffs in error.

Whit LaFon and Jack Woodall, Jackson, for defendant in error.

BEJACH, J. This cause involves an appeal in error by Arnold Garner, Percy Wells, Bobby Maness and Robert Wamble, who had been sued in the lower court as partners or joint adventurers d/b/a Wamble Trucking Company, and against whom a jury had returned a verdict of $21,400, of which $21,000 was for compensatory damages, and $400.00 for punitive damages. This verdict was approved by the trial judge and judgment entered accordingly.

The suit grew out of an accident which occurred on Tennessee State Highway 20 at a point about 8 miles northwest of Jackson, Tennessee. It happened at about 12:30 o'clock A. M., October 24, 1959. In this accident the plaintiff, L. H. Maxwell, a member of the Tennessee Highway Patrol, ran his automobile into a tractor trailer outfit which was left parked in the highway without lights and without warning devices as required by Tennessee statutes. The tractor trailer outfit was at the time hauling bales of cotton, the point of shipment of which was from Mauldin, Missouri. Arnold Garner was the owner of the tractor; Bobby Maness was owner of the trailer; Percy Wells was the driver; and Robert Wamble, d/b/a Wamble Trucking Company, was named on the bill of lading for the cotton. The parties will be referred to according to

the status which they occupied in the lower court, defendant in error having been the plaintiff and plaintiffs in error the defendants, or they may sometimes be referred to by their individual names.

The operation here involved was conducted in the name of Robert Wamble, d/b/a Wamble Trucking Company, in whose name the bill of lading was issued. All of the defendants were to share in the profits of the enterprise. A trailer belonging to Robert Wamble had become disabled and the trailer owned by Bobby Maness had been substituted, for the use of which it was agreed that Maness should receive 13% of the profits.

The plaintiff's declaration is in two counts, the first count being based on alleged acts and omissions constituting common law negligence, and the second count on violation of statutes of the State of Tennessee regulating the operation of trucks on the highways, which require certain precautions in the event same become disabled. The declaration alleges and the proof establishes that the tractor trailer outfit had been parked about four hours before the accident. The declaration also alleges and the proof establishes that after the tractor became disabled, defendant Garner returned with defendant Wells to the scene of the accident where he turned off the lights, and went home to bed leaving the tractor and trailer unattended, without lights or flares. No excuse for failure to employ a wrecker to remove the tractor trailer from the highway was offered, except that he did not have money to pay for such service. There is proof that reflectors were put out,—one in front of and one behind the tractor and trailer; but the statute involved, sec. 59-918 and 59-919, T. C. A., requires three flares or three reflectors.

In this Court, as plaintiffs in error, defendants have filed seven assignments of error. These present for consideration by this Court four questions, which are as follows:

1. Whether or not plaintiff should have been held, as a matter of law, guilty of contributory negligence because of failure to stop his automobile within the distance lighted by his headlights.

2. Whether or not the defendants were engaged in a joint venture or a partnership so as to warrant the verdict against defendants Wamble and Maness, as well as against defendants Garner and Wells.

3. Whether or not evidence of plaintiff with respect to alleged medical and hospital expenses was properly admitted in evidence.

4. Whether or not the verdict was excessive.

We will dispose of these questions in the order named.

1. What is known as the "The assured clear distance rule" arises out of the decision of the Supreme Court in 1914 in the case of West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301, in which case it was held that the failure of a plaintiff to stop his car within the distance lighted by the headlights of the car, and thus avoid a collision, amounted, as a matter of law, to contributory negligence which barred plaintiff's suit. Since that decision, however, numerous decisions of the Supreme Court and of the Court of Appeals have modified this rule, at least to the extent that exceptional circumstances make the applicability of the rule a question of fact for the jury, rather than a question of law for the court. These cases include Main Street Transfer & Storage Co. v. Smith

166 Tenn. 482, 63 S. W. (2d) 665; Patterson v. Kirkpatrick, 11 Tenn. App. 162; Huntsman Bros., Inc. v. Grocers Baking Co., 12 Tenn. App. 535; Halfacre v. Hart, 192 Tenn. 342, 241 S. W. (2d) 421; and Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756.

In the case of Inter-City Trucking v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756, which case was quite similar on its facts to the case at bar, it was also held that, where the defendant was guilty of gross negligence, the defendant was thereby precluded from relying on the defense of contributory negligence. In the instant case, not only was gross negligence alleged, but the jury returned a verdict of $400.00 for punitive damages based upon such allegation. The defendant Garner testified that he knew the law required that three flares or reflectors be displayed, but that he put out only two. He also testified that he turned out the lights on the tractor to avoid running the battery down, and went home to bed. The record discloses that there were wrecker companies available at Jackson, Tennessee, some eight miles distant from the scene of the accident, which could have removed the tractor trailer from the highway before the wreck occurred; and the only excuse given by Garner for failure to employ one of these was that he did not have the money to pay for such service.

The gross negligence involved in the Inter-City Trucking Co. case, which deprived the defendant of the right to rely on the defense of contributory negligence consisted of violation of the same statute involved in the instant case, which at that time (1942) required the placing of three flares capable of being seen and distinguished at a distance of 500 feet under normal atmospheric condi-

tions. In that case, the Supreme Court, speaking through Mr. Justice Chambliss, later Chief Justice, said:

"The violation of this statute was negligent per se. The driver of an approaching vehicle had a right to assume that the law was being observed and until this glaring and inescapable warning appeared might proceed on the assumption that no standing obstruction of this character was ahead. The failure to place these protective signals, under circumstances which disclosed no reasonable excuse for such neglect, would seem to bring this actionable negligence per se within the definition of gross negligence, as charged in the declaration in this case, which precludes reliance upon the defensive plea of contributory negligence, relied, on by the defendant." Inter-City Trucking ·Co. v. Daniels, 181 Tenn. 129, 178 S. W. (2d) 757.

We think the conduct of the defendants in the instant case warranted the jury verdict for punitive damages, and justifies the conclusion that defendants were guilty of such gross negligence as to deprive them of the right of relying on the defense of contributory negligence. It thus becomes immaterial whether or not the "assured clear distance rule" might or could be applicable to the facts of the instant case. In any event, defendants' counsel made no effort to correct the failure of the trial judge to charge, with reference to the "assured clear distance rule" by submitting a special instruction on the subject; and it has long been held that mere meagerness of the trial judge's charge will not be reversible error in the absence of special instructions submitted for amplification of the charge. Sutherland v. Shelton, 59

Tenn. 374; Guaranty Fund Life Soc. v. Ford, 104 Tenn. 533, 58 S. W. 239, and numerous other cases.

But, it is contended on behalf of defendants that the facts of the instant case did not justify a charge on the subject of gross negligence. Aside from the fact, as heretofore stated, that we think the facts did justify the jury's verdict for punitive damages, this question was not presented in the defendant's motion for new trial. Consequently, it cannot be considered by this Court on appeal. Hyter v. Wheland Co., 207 Tenn. 127, 338 S. W. (2d) 571.

2. The question on whether or not the jury's verdict was properly returned against all four defendants turns on whether or not the proof establishes that said defendants were engaged in a joint venture or partnership transaction. On this subject, 30 Am. Jur. 940, says:

"Admittedly it is difficult to distinglish between joint adventures and partnerships. The relations of the parties to a joint adventure and the nature of their associations are so similar and closely akin to a partnership that it is ordinarily held that their rights, duties and liabilities are to be tested by rules which are closely analogous to and substantially the same, if not exactly the same, as those which govern partnerships."

And, on this same subject, our Supreme Court in Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S. W. 961, said:

"A joint adventure is generally regarded as of a similar nature to that of a partnership and governed by the same rules applicable to partnerships."

We are therefore justified in resorting to the Uniform Partnership Act which has been enacted in Tennessee, and which is contained in sections 61-101 to 61-142, T. C. A. Section 61-105, T. C. A. defines a partnership as "An association of two (2) or more persons to carry on as co-owners a business for profit"; and subsection (4) of section 61-106 T. C. A. provides, "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." In applying these Code sections, our Supreme Court, in Memphis Natural Gas Co. v. Pope, 178 Tenn. 580, 161 S. W. (2d) 211, said: "The sharing by a person of profits of a business is prima facie evidence [that] he is a partner in the business."

A joint adventure is defined in 48 C. J. S. sec. 1, page 801, as follows:

"A joint adventure is a legal relation of recent origin created by the American courts and is generally described as an association of persons to carry out a single business enterprise for profit."

The Supreme Court, speaking through Mr. Justice Burnett in Spencer Kellogg & Sons, Inc. v. Lobban, 204 Tenn. 79, 315 S. W. (2d) 514, at page 520, said:

"Many courts over the country have in the past few years defined this term of a joint venture. It signifies to the judicial mind (a joint venture is a creation of the American Courts) that it is something more or less temporary—something gone into to more or less take a gamble on this proposition or that, or as they say sometimes, 'take a flier'."

In Memphis Natural Gas Co. v. Pope, 178 Tenn. 580, at page 586, 161 S. W. (2d) 211, at page 213, the Supreme Court said:

"But whether a corporation can technically become a partner, or whether it requires charter authority to become a partner, a corporation can make contracts in pursuance of its corporate powers that will bind it in joint adventures or undertakings."

In the case of Southern Bell T. & T. Co. v. Lee, 40 Tenn. App. 352, 292 S. W. (2d) 45, in an opinion written by Judge Avery, Presiding Judge of this section of the Court of Appeals, the Southern Bell T. & T. Company was held liable to plaintiffs for injuries resulting from stepping into a hole from which had been removed a pole jointly owned by the Southern Bell Company and the Memphis Street Railway Co., even though the pole had been removed by the Memphis Street Railway Company's employees, who had left the hole in the condition which caused plaintiff to step into it. This decision resulted from the ruling by this Court that the ownership and maintenance of the pole in question was under a joint enterprise agreement, and that the removal of the pole, and negligent leaving of the hole into which plaintiff had stepped was incidental to that joint enterprise.

The facts of the instant case warrant a conclusion that if the defendants were not formal partners, they were at least engaged in a joint enterprise which makes them liable as partners.

In any event, the defendants in the instant case were sued as partners, d/b/a Wamble's Trucking Company, and no sworn pleading or answer was filed denying

the existence of such partnership. It follows that under the provisions of section 24-511 T. C. A., proof of partnership was unnecessary. Section 24-511 T. C. A. is as follows:

"Where two (2) or more persons are sued as partners, in law or equity, it shall not be necessary to prove the partnership unless the fact of the partnership is denied under oath of those so sued."

3. Defendants' Assignment of Error VI complains of the ruling of the trial judge in allowing witness John W. Headrick, Office Manager of the Jackson-Madison County Hospital, to testify as to hospital and physical therapy bills incurred by plaintiff, without a showing that such medical expenses were necessary, and that charges therefor reasonable.

 The witness, Headrick, testified as to the reasonableness of the charges made by the hospital as compared to charges made by other hospitals in the general area. Also, Dr. Dodson testified that he treated plaintiff at the Jackson-Madison County General Hospital and "put him on physiotherapy to limber up his knee", and Dowling testified, specifically, that the amount of his bill, $200.00, was reasonable. We think the testimony objected to was competent. At most, even if the testimony objected to were considered as having been improperly admitted, it would not justify a reversal of the cause, but only a remittitur. And under the provisions of our "harmless error statute", section 27-117 T. C. A., we cannot say that the result of the trial would have been different, even if this testimony had been excluded. This issue is to a considerable extent inseparable from defendants' con-

tention that the verdict of the jury was excessive, which will be separately treated.

4. Defendants' insistence that the verdict in the instant case was so excessive as to indicate passion, prejudice or confusion on the part of the jury, is, in our opinion, without merit. On the date of the accident, October 24, 1959, plaintiff was 48 years old, in good health, and earning $370.00 per month. He had a life expectancy of 23.6 years. He received a bilateral fracture of the mandible, the condinent portions of the mandible were broken, and he had multiple injuries to his face and general injuries. His upper jaw was used as a splint, and his lower jaw was wired to it to hold it in place. Wires and rubber bands were used to hold it in place for several weeks, and after that a false joint developed which was not perfect. Plaintiff was fed liquids for six or eight weeks. He lost five teeth from injuries sustained in the accident, some of which were broken off in the jaw bone. There was testimony that plaintiff would have permanent impairment of his jaws. He had 50 or 60 stitches taken in his face, and five in his head. Plaintiff's head was swollen to three times its ordinary size, and he had black-out spells after receiving treatment. His wife stayed with him at the hospital to save nursing bills, and his sister, a registered nurse, donated her services for five weeks. Plaintiff lost from 20 to 30 pounds as a result of the accident, and still has headaches and pain for which he has to take medicine for relief. He had extensive lacerations of his right cheek and jaw, and a comminuted fracture of the right knee cap, together with a contusion of the right ankle. One cut on his face ran diagonally from the right corner of the mouth, down over the lower jaw beneath the chin, leaving a scar approximately 3⅛ inches in

length, with a second scar which formed a Y, about 2 inches in length. His knee cap was so badly injured that it had to be removed. It was placed in a splint for two weeks, and thereafter until the time of the trial, had been regularly taking physiotherapy treatments. The injury to plaintiff has resulted in atrophy of his right thigh. In addition, his out-of-pocket expenses were in excess of $6,000.

Under all the facts and circumstances of the case, we think the award of $21,000 as compensatory damages was reasonable. As to the award of $400.00 for punitive damages, if punitive damages were recoverable at all, and we hold that they were, the award of that amount is modest.

All of defendants' assignments of error will be overruled, and the judgment of the lower court will be affirmed at the cost of defendants and their sureties on the appeal bond.

Carney, J., and Crownover, Special Judge, concur.

On Petition to Rehear.

BEJACH, J. Plaintiffs in Error have filed a petition to rehear seeking a reconsideration by this court of our opinion filed December 20, 1961, in which we affirmed the judgment of the lower court.

The petition to rehear sets out that, in our opinion filed December 20, 1961, it is stated that all of the petitioners, the defendants in the lower court, were sued as partners, d/b/a Wamble Trucking Co., and that since no sworn pleading was filed denying the existence of such partnership, the plaintiff (obviously meaning the dedendant), does not have to offer proof of such partner-

ship, under the provisions of section 24-511 T. C. A. The petition to rehear asserts that, "This court's statement concerning petitioners being sued as partners is absolute error", because the original declaration in this cause alleges, "that the truck tractor owned by the defendant, Arnold Garner, and the trailer owned by the defendant, Bobby Maness, were at the time being used by them in a joint venture with the defendant, Robert Wamble, d/b/a Wamble's Trucking Co."

■ It is true that the plaintiff in the lower court, who is now respondent to the petition to rehear, sued the defendants, now petitioners, as members of and participants in a joint venture, instead of labeling that joint venture a partnership. We think this is immaterial. On this subject, we quote from 30 Am. Jur.—Joint Adventures—sec. 4, p. 940, as follows:

"Admittedly, it is difficult to distinguish between jont adventures and partnerships. The relations of the parties to a joint adventure and the nature of their association are so similar and closely akin to a partnership that it is ordinarily held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to, and substantially the same, if not exactly the same, as those which govern partnerships. From the standpoint of the element of mutual agency of the members of a joint adventure, the relationship has often been said to be akin to that of partnership or of partnership for a single transaction. In general, however, it is now understood that the two relationships are not identical, and that decisions defining and describing partnerships are not necessarily controlling upon the

question of whether parties to a particular contract are joint adventurers. In other words, it is not necessary, in order that there be a joint adventure, that a legal partnership exist."

Also, from the opinion of our own Supreme Court in Pritchett v. Thomas Plater & Co., 144 Tenn 406, 437, 232 S. W. 961, written by Mr. Justice Hall, we quote as follows:

"The partnership may exist for a single transaction, venture or undertaking. 30 Cyc., 370, 380; 115 Am. St. Rep., 408, note; 18 L. R. A. (N. S.) 1090, note.

"A joint adventure is generally regarded as of a similar nature to that of a partnership and governed by the same rules applicable to partnerships." Pritchett v. Thomas Plater & Co., 144 Tenn. 437, 232 S. W. 970.

Such being the state of the law on this subject, we think that even if the statement complained of in our former opinion be considered as technically inaccurate, such inaccuracy was immaterial, and a correction of it would not change the result reached in our opinion, nor entitle petitioners to have their petition to rehear granted.

All other questions presented by the petition to rehear were fully covered in the original briefs and arguments presented in open court, and were disposed of by our opinion filed December 20, 1961.

We find no merit in the petition to rehear and same is accordingly denied and overruled.

Carney, J., and Crownover, Special Judge, concur.