**TIPTON COUNTY BOARD OF EDUCATION and William T. Eaton, Petitioners,**

v.

**Lawrence DENNIS, b/n/f Stephen Dennis and Stephen Dennis, Individually, Respondents.**

Supreme Court of Tennessee.

Jan. 23, 1978.

J. Thomas Caldwell, Ripley, J. Houston Gordon, Covington, for petitioners.

Ricco Gatti, Jr., Memphis, for respondents.

## OPINION

HARBISON, Justice.

These actions were instituted under the Tennessee Governmental Tort Liability Act, T.C.A. §§ 23–3301 et seq. They arose out of a collision between an automobile being driven by Mrs. Jane Ann Dennis and a school bus which was stalled on State Highway 59 at about 7:30 a.m. on January 23, 1974. Mrs. Dennis was fatally injured in the accident. Her twelve-year-old son, a passenger in her car, sustained personal injuries.

The trial court found that Mrs. Dennis was guilty of proximate contributory negligence and dismissed the action brought for her wrongful death. He allowed a recovery to the minor, Lawrence Dennis, and to his father for medical expenses. From these judgments the plaintiffs appealed, contending that the trial court had erred in dismissing the wrongful death action and in not allowing punitive damages in the action brought on behalf of the minor. They contended that the trial court erred in not finding the operator of the school bus guilty of gross negligence.

The Court of Appeals affirmed the compensatory award in the suit of the minor but held the bus driver to be grossly negligent, entitling the plaintiffs to punitive damages. It also held that Mrs. Dennis was guilty only of remote contributory negligence, which would not bar recovery in view of the gross negligence of the bus driver. It allowed compensatory and punitive damages in the wrongful death action.

This Court granted certiorari to consider whether or not punitive damages are recoverable, as a matter of law, under the provisions of the Tennessee Governmental Tort Liability Act, and also to review the disposition of the wrongful death action by the Court of Appeals. There were numerous other issues before the trial court and Court of Appeals, but we have limited our consideration to the two questions stated above, one of which is legal and the other factual.

A large number of witnesses testified in the cases, and there was a great deal of conflicting testimony. As provided by statute, the actions were tried without a jury, T.C.A. § 23–3319, and review on appeal is governed by T.C.A. § 27–303.

On the January morning when the accident occurred, Daylight Saving Time was in effect, and there is little question from the record that the collision occurred during darkness. A light misty rain had been falling, and the pavement was wet, although it was not raining at the time of the accident. The school bus had been traveling north on a straight, relatively level two-lane highway. The investigating highway patrolman testified that the road was completely level to the south of the collision site for more than a mile. To the north there was a gradual incline, cresting several hundred feet past the accident scene. The automobile being operated by Mrs. Dennis was also proceeding in a northerly direction, and it struck the school bus in the rear.

There were approximately twenty to twenty-five children on the bus at the time of the collision. The driver had stopped to

pick up a regular passenger, Debbie Boyd, at the home of her grandmother, Mrs. Freddie Gibson. He stopped at or near the driveway to the residence, which was situated on the east side of the highway. The right wheels of the bus were at the edge of the pavement, but not on the shoulder.

After Debbie Boyd had boarded the bus, the driver shifted into gear, but the motor of the bus stalled after the vehicle had moved forward a very short distance. The driver made two attempts to start the motor, but the starter did not engage. He got out of the bus, raised the hood, and checked the battery cable, which was intact. He returned to the bus and again attempted to start the engine, without success. He then requested the oldest boy on the bus, Danny Brent, who was sixteen years of age, to stand on the opposite shoulder of the highway to flag traffic. The driver went into Mrs. Gibson's home and called the maintenance shop of the school system for assistance. He received an answer immediately, and was advised that a mechanic should be on the scene within about ten minutes. He then returned to the highway, where a number of cars had stopped behind the bus. He and Danny Brent waved about six cars around the bus and were attempting to flag traffic when Mrs. Dennis approached from the south.

The bus remained stalled in the northbound lane of the highway for ten to fifteen minutes between the time of its initial stop and the collision. Most of the children remained on the bus. The driver testified that there were flares on board, and that these were in operable condition. He had not placed them along the highway prior to the impact, however, as required by T.C.A. § 59-919. He testified that he simply did not think to get the flares, with all of the other matters which required his attention.

Mrs. Dennis was apparently driving at a high rate of speed for the weather conditions then obtaining. The impact between her automobile and the bus was violent, driving the school bus more than one hundred feet north on the highway and into the southbound lane, and completely demolish-ing the front portion of the automobile. Witnesses estimated her speed at about fifty-five miles per hour, but we agree with the observation of the Court of Appeals that a trier of fact could reasonably conclude that the vehicle was traveling at an even higher rate of speed.

Lawrence Dennis testified that he did not see the school bus until his mother's vehicle was within ten or fifteen feet of it, and that there were no lights on the bus at the time. He also testified, however, that he was just beginning to learn to operate an automobile and that he was quite sleepy, almost "groggy," when the collision occurred.

There was sharply conflicting testimony concerning the presence or absence of lights on the bus at the time of the accident. A number of persons who were driving or riding in other automobiles prior to the collision testified that they did not see any lights on the bus, either from the front or the rear. Others testified to the contrary, one witness testifying that she stopped behind the bus and then pulled around it, and that its lights were operating. The bus driver testified that the flashers on the bus were operating continuously from the time he stopped until the accident occurred. He said that the headlights were burning when he first stopped, but that he cut these off in order to try to start the engine, later turning them on again. He testified that at no time were the flashers ever turned off.

One eyewitness, traveling north behind the Dennis vehicle, testified unequivocally that the lights of the bus were flashing, and that he saw them over two-tenths of a mile before he reached the accident scene. He saw the impact, saw the bus careen down the highway thereafter, and testified that its flashers were burning during and after the impact. The fact that the lights were burning after the accident was confirmed by the investigating highway patrolman, and by one of the maintenance employees of the School Board. The latter also testified that they were still on when the damaged bus was brought into the garage later in the morning.

Debbie Boyd, the boarding passenger, was slightly injured in the accident and made claim for damages. Her case was tried along with the cases now under consideration. Her grandmother, Mrs. Gibson, testified positively that the bus lights were flashing when the accident occurred, and that she heard her daughter, mother of the child, exclaim that Mrs. Dennis was going to run into the bus. Danny Brent, the sixteen-year-old who was assisting with traffic, and whose injured sister was also a claimant in the trial court, testified that the bus lights were flashing when the accident occurred.

There was, therefore, material evidence in the record to justify a factual decision either way as to whether the bus was lighted before the collision. The trial judge concluded that the lights either were not burning or that they were so dim as not to be visible under the weather and driving conditions then existing. The Court of Appeals concurred in this finding.

The trial judge, however, also concluded that the bus driver was not guilty of gross neglect. He observed that the driver was "a relatively uneducated man and that he tried to do what he thought best under the circumstances." The Court of Appeals overturned this conclusion and found that the bus driver was guilty of gross neglect of duty, to the point that he might as well have left the scene of the accident, as occurred in one of the cases which it cited and relied upon, Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S.W.2d 756 (1944).

The Court of Appeals also reversed. the finding of the trial judge that the wrongful death action was barred by the proximate contributory negligence of Mrs. Dennis. It concurred in finding that she was at fault, but characterized her negligence as being "remote" only.

We are unable to agree with either of these conclusions of the Court of Appeals. In the first place, it seems to us that the school bus driver did not evince a conscious neglect of duty or display a callous indifference to consequences. He was faced with a school bus loaded with children, a vehicle which had suddenly experienced an engine failure, and a busy highway filled with traffic, which was stopping and building up behind the bus. He dispatched the oldest student on the bus to assist with traffic, made a very brief phone call for assistance, and then returned himself to try to relieve traffic congestion. Whatever the ultimate factual decision on the matter may have been, he clearly believed that flashing lights on his bus were operating as a warning to approaching cars, and substantial independent evidence was offered in support of his testimony in that regard. A total of not more than fifteen minutes elapsed. While his failure to place flares, as required by statute, constituted negligence per se, and while we have no disposition to alter the conclusions of the courts below that this failure was a direct and proximate cause of the accident, we do not think his conduct at all comparable to that of the truck driver who abandoned a darkened vehicle for over an hour and a half and was found in a near-by restaurant after the accident, as in the Inter-City Trucking Co. case, supra. Nor is it even remotely comparable to that of the owner and the driver in Garner v. Maxwell, 50 Tenn.App. 157, 360 S.W.2d 64 (1961). There the vehicle was on the highway for over four hours at night. The owner and the driver, Garner and Wells, deliberately turned off the lights to protect the battery, left the vehicle unattended without lights or flares and went home to bed.

The trial judge saw and observed all of the witnesses in this case and heard the conflicting testimony. Based thereon, he concluded that the bus driver was not guilty of gross misconduct or aggravated neglect of duty. We are of the opinion that the evidence does not preponderate against this finding, and we reverse the holding of the Court of Appeals that the bus driver was guilty of gross negligence.

We are also unable to conclude that the negligence of Mrs. Dennis, found to exist by both courts below, was anything other the direct and proximate and constituted an immediate, contributing cause to the tragic

accident in which she lost her life. Accordingly the judgment of the Court of Appeals, awarding compensatory and punitive damages for her wrongful death, is reversed, and the judgment of the trial court, dismissing that suit, is affirmed at the cost of the respondent therein.

■ No issue is made before us as to the amount of compensatory damages awarded to the minor, Lawrence Dennis, and to his father for medical expenses. The Court of Appeals added punitive damages to the compensatory award made by the trial court, and, for the reasons stated above, on the facts, we are of the opinion that this was error. We are further of the opinion that it was error as a matter of law, because we do not consider that punitive damages are recoverable under the provisions of the Tennessee Governmental Tort Liability Act, T.C.A. § 23–3301 et seq.

Like many other statutes permitting recovery from governmental entities for tortious injuries, the Tennessee Governmental Tort Liability Act contains several exceptions. It does not authorize any recovery at all for most willful or intentional torts. T.C.A. § 23–3311. It generally removes immunity from suit, with stated exceptions, "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment    . . . ." *Ibid.* It specifically removes such immunity for injuries resulting from negligent operation of motor vehicles or other equipment. T.C.A. § 23–3308.

The statutes define injury for which damages may be recovered as follows:

"The word 'injury' means death, injury to a person, damage to or loss of property or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent." T.C.A. § 23–3302(4).

■ The theory of punitive, or exemplary damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him.

As stated in a recent case, they are "in excess of compensatory damages and in addition thereto." *Inland Container Corp. v. March,* 529 S.W.2d 43 (Tenn.1975). *See Liberty Mutual Ins. Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760 (1962); *Knoxville Traction Co. v. Lane,* 103 Tenn. 376, 53 S.W. 557 (1899).

Apart from statute, the weight of authority is that punitive damages are not recoverable from municipal or local governments, on grounds of public policy. Since the ultimate payment of public tort claims devolves upon taxpayers, most courts have concluded that punitive awards in such cases have little deterrent value and do not advance any other public purpose underlying exemplary damages. *See* 57 Am.Jur.2d, *Municipal, Etc. Tort Liability* §§ 318 et seq.; 63 C.J.S. *Municipal Corporations* § 947; Annot., 19 A.L.R.2d 903 (1951). In many jurisdictions having tort claim statutes, there are express provisions disallowing punitive awards. *See, e. g.* 28 U.S.C.A. § 2674 (Federal Tort Claims Act); West's Ann.Gov. Code § 818 (California, 1977 Supp.) (disallowing "damages imposed primarily for the sake of example and by way of punishing the defendant"); Minn.Stats. Ann. §§ 466.04 (1977 Supp.); Okla.Stats. Ann. § 11–1751(b) (1977 Supp.).

The Tennessee statute does not expressly prohibit an award of punitive damages. However, it seems to us inappropriate and not in accord with the legislative intent to permit a punitive award against a public body and its employees where only a negligent act is involved, even though it might be characterized as gross, when the Legislature has excluded compensatory as well as punitive awards in nearly all cases involving willful or intentional misconduct. Further, the definition of "injury" for which recovery may be had is not consonant with the theory of punitive damages. We are of the opinion that in adopting the Tennessee Governmental Tort Liability Act, the General Assembly intended to authorize compensatory damages, but not exemplary or punitive damages, within the statutory limits. T.C.A. § 23–3327.

Accordingly, the judgment of the Court of Appeals in the action brought on behalf of Lawrence Dennis is modified by deleting the award of punitive damages. It is otherwise affirmed. Costs accrued in the appellate courts in that case are taxed against respondents; costs in the trial court against petitioners. The cause will be remanded to the trial court for any necessary orders incident to the final judgment.

HENRY, C. J., and COOPER, JONES and BROCK, JJ., concur.