## NEAL et al. v. MIDGETT.—198 S. W. (2d) 32.

Middle Section.  July 27, 1946.

Petition for Certiorari denied by Supreme Court, November 30, 1946.

S. B. Gilreath and A. A. Adams, Jr., both of Lebanon, for plaintiff in error.

Louis Chambers, A. B. Humphreys, Jr., and Willard Hagan, all of Lebanon, for defendant in error.

HOWELL, J. This is a damage suit growing out of the death of the plaintiff's intestate, Will Henry Stevens, who was run over and killed by a taxicab owned by the defendant Frank Neal and driven by his employee, the defendant Ernest McIntyre, on Saturday night, May 12, 1945, about midnight, on what is known as the Blue Bird Road, about one and one-quarter miles East of Lebanon in Wilson County, Tennessee. The deceased did not recover consciousness after being struck by the cab and died in a hospital at Lebanon on May 18, 1945.

The plaintiff O. B. Midgett qualified as administrator of the estate of Will Henry Stevens and brought this suit for the use and benefit of his estate. Deceased was survived by his Mother and Father, two sisters and a brother. He was nineteen years of age and lived with his family and contributed to their support.

The declaration consists of three counts, one based upon common law negligence and two upon statutes regulating driving upon the highways of the State.

The defendant filed a plea of not guilty and the case was heard by the Circuit Judge and a jury and resulted in a verdict for the plaintiff for $5,500 and costs.

. The defendants have by proper procedure appealed in error to this Court and have filed ten assignments of error. The first three assignments are based upon the evidence and the failure of the Court to grant a motion by the defendants for peremptory instruction in their favor and the remaining seven assignments are based upon the charge and the refusal of the Court to charge certain special requests.

The record discloses that the deceased and his family lived on the farm of the plaintiff, administrator, and were cultivating a crop of tobacco and that when not working in this crop the deceased worked for wages.

On the evening of Saturday, May 12, 1945, the deceased left home and went to Lebanon. He was seen on that night at a night club near Lebanon and on the street in Lebanon later in the night. There is some evidence that the deceased was drinking intoxicating liquor but no one testifies that he was drunk.

About midnight the defendant McIntyre driving a taxicab for the defendant Neal, left Lebanon to take a passenger, J. B. Hall, to his home and this necessitated driving out the Blue Bird Road. When a little over a mile from town the driver saw an object in the road which he said he thought was a piece of paper and attempted to straddle it and as·he passed over it he felt or heard something strike his car. Just before they reached this object in the road the passenger remarked that he thought it was a man. The night was very foggy and the lights on the taxicab were lowered. After passing over this object the car was driven several feet and then turned around and with the lights of car turned on it

the driver found that he had run over a man. He drove back to town, saw the defendant Neal and some officers and they went back to the scene of the accident and took the injured man to a hospital where he died about a week later.

There was contradictory evidence as to the speed of the car at the time of the accident and some negroes who were near testified that the taxicab was going very fast and to conversations with the defendant McIntyre immediately after the accident.

■ A careful reading of the bill of exceptions discloses that there was ample competent and material evidence to sustain the jury in finding the facts in favor of the plaintiff and upon which to base a verdict.

■ The law is well settled that under these circumstances when the trial Judge approves the verdict this Court will not disturb it. Many cases might be cited. One of the latest is Osborn v. City of Nashville, 182 Tenn. pp. 197, 203, 204, 185 S. W. (2d) p. 510.

The remaining assignments of error are directed at the charge of the Court and the refusal to charge certain special requests.

The defendant McIntyre had testified that the accident happened just after midnight, that it was very foggy and difficult to see, that he had to drive with his lights dimmed or lowered so he could see, that he did not notice his speedometer but thought he was going about 18 miles per hour. Other witnesses had testified that he was driving much faster.

McIntyre further testified as follows:

"Q. And that you came on down to the scene where you did, or whatever you did, you still had your lights in that same condition, and still driving along about the same rate of speed? A. Yes, sir.

"Q. You never did slow up when you came to this object in the road? A. Yes, sir, I taken my foot off the gas and straddled it.

"Q. Well, did you slow up by putting your brakes on. A. I imagine I slowed up, I didn't put any brake on.

"Q. When you took your foot off the gas you didn't slow up; so you didn't, as a matter of fact, do anything by way of putting on your brakes to stop the car? A. That's right."

He also testified that the road was straight at the place of the accident and that there was nothing to keep him from seeing the body lying in the road.

Mr. J. B. Hall, who was the passenger in the taxicab and who was being taken to his home by defendant McIntyre, testified in part as follows:

"Q. As you came down to the place, I believe you say you saw the body? A. Just as we got over it.

"Q. Well, you couldn't have been up over it, you couldn't see it very well could you? A. What I mean, just as the car went up almost on the body I noticed that it was a body.

"Q. That it was a man, and of course you told the driver 'hold on, we are running over a man' did you? A. I said 'looks to me like a man.'

"Q. So he knew it was a man before he ran up over it? A. I don't know whether he knew it or not.

"Q. You just said you told him? A. He said 'Looks like a box,' just as we started over the body, I said it looks like a man.

"Q. Well, he stopped on it? A. No, he didn't stop on it.

"Q. Well, he went two or three car lengths past it? A. That's right."

From this testimony and that of other witnesses it is evident that the driver of the taxicab was guilty of reckless and careless driving and failure to take proper steps to avoid the accident. The defendant McIntyre saw the object in the road, Hall remarked that it was a man. McIntyre did not apply his brakes or make any effort to stop, except to take his foot off of the accelerator.

In Todd v. Cincinnati, N. O. & T. P. R. Co., 135 Tenn. p. 92, on page 104, 185 S. W. 62, on page 64, L. R. A. 1916E, 555, the Court said:

"If during a period at or before the infliction of injury adequate for preventive action by defendant he had actual knowledge of plaintiff's danger and failed to exercise ordinary care to avoid it, all authority is to the effect that plaintiff may be awarded relief; for then the negligence of defendant takes the color of willfulness."

We have carefully read and considered the charge of the Court and the assignments based upon the failure to charge certain special requests. The charge is fair and complete, fully covers the questions of negligence and contributory negligence and we find no reversible errors therein. The subject matter of the special requests denied is fully covered in the charge.

All assignments of error are overruled and the verdict of the trial Court is affirmed.

A judgment will be entered here in favor of the plaintiff and against the defendants for the sum of $5,500 and interest from November 13, 1945, and the costs of the cause.

Affirmed.

Felts and Hickerson, JJ., concur.