# CITY OF CHATTANOOGA, etc. v. MRS. PAULINE SHACKLEFORD.—298 S. W. (2d) 743.

Eastern Section. July 10, 1956.

Petition for Certiorari denied by Supreme Court, December 7, 1956.

Chambliss, Chambliss & Brown, Chattanooga, for plaintiff in error.

Whitaker, Hall & Haynes, and Charles W. Lusk, Jr., Chattanooga, for defendant in error.

HOWARD, J. Referring to the parties as they appeared below, this action was instituted to recover damages for the wrongful death of plaintiff's husband, William B. Shackleford, a roofer 42 years of age, who was killed when a piece of guttering he was handling came in contact with an uninsulated 2400 volt electric wire maintained by the defendant, City of Chattanooga, as a part of its electrical distribution system. The accident occurred on July 1, 1954, while the deceased and a helper, John Thomasson, were preparing to replace the old guttering on a two-story brick building, located on the south-

east corner of the intersection of North Holly and East Third Streets, in said city. Holly Street runs north and south, and the west side of the brick building parallels this street. Third street runs east and west, and the front of the building faces said street. Defendant's lines ran parallel with Holly Street, and because of the location of the poles, three of the wires hung diagonally across the western portion of the building, the roof of which was flat and sloped downward to the south end where the guttering was being replaced. Across the front as well as along the two sides of the building, a parapet estimated at from 12 to 18 inches high extended above the roof.

Previous to the accident, the new guttering, about 22 feet in length, had been assembled by the decedent on Holly Street, and balancing it on his right shoulder, he had carried it to the top of a 20 foot metal ladder leaning against the west side of the building, near the southern end. There, while the decedent was still standing on the ladder which he was holding onto with his left hand and simultaneously using his right hand to slide the guttering across the parapet, the long end of the guttering came in contact with the defendant's charged wire, which hung at an estimated distance of from $6\frac{1}{2}$ to $8\frac{1}{2}$ feet above the roof, the current therefrom entering and passing through his body and causing him to fall to the ground. Thereafter, he was rushed to the hospital where he remained in an unconscious condition until he died several hours later.

Plaintiff's declaration alleges that the defendant was negligent in (1) placing its high voltage electric wire across the roof of the building, (2) maintaining its wire at an insufficient height above the building, (3) failing to

properly insulate the wire, and (4) failing to maintain warning signs of the dangerous condition of the wire for persons lawfully on said roof.

By plea of general issue and numerous special pleas, the defendant denied all allegations of negligence and pleaded contributory negligence on the part of plaintiff's intestate.

There were two trials of the case in which the defendant, at the conclusion of all the evidence presented, moved for a directed verdict. These motions were overruled. At the first trial the jury being unable to agree, a mistrial was ordered and the defendant preserved and filed a Wayside Bill of Exceptions. The second trial resulted in a jury verdict for the plaintiff for $10,000. This verdict was approved by the trial court and upon defendant's motion for a new trial being overruled, this appeal in error was granted and perfected.

Following our established procedure, we shall first consider independently the defendant's assignments of error directed to the first trial of the case. Caruthers History of a Lawsuit, 7th Ed., sec. 441, p. 480.

By these assignments the defendant contends that the evidence showed (1) there was no negligence on its part, (2) that the decedent was guilty of contributory negligence as a matter of law, and (3) that the trial court committed error in refusing to sustain its motion for a directed verdict.

While distributors of electricity are required to use the highest degree of care to protect persons who may come in contact with their wires, they are not insurers, and one who voluntarily and heedlessly puts him-

self in contact therewith and is injured in consequence, his imprudence must be regarded as the proximate cause of his injury or death, and recovery will be denied.

In 29 C. J. S., Electricity, sec. 53, pp. 605, 606, 607, it says:

"A failure on the plaintiff's part to act as an ordinarily prudent person would have done under the circumstances constitutes contributory negligence.

"The question whether plaintiff was guilty of negligence contributing to his damage, injury, or death depends on whether, under all the facts, circumstances, and conditions surrounding him, he acted as an ordinarily prudent man would have acted similarly situated, taking into account the extent of his experience. In the case of a child the question is whether his conduct under the circumstances indicated want of that care which is to be expected, and which the law demands of one of his age seeing what he saw and knowing what he knew. One who has notice of the dangerous condition of a wire or other electrical appliance and voluntarily or recklessly brings himself into contact with it cannot hold the company for the resulting injuries, and this is true of any adult, although he is wholly unskilled in the handling of electricity. To give rise to this defense, however, it must be shown that plaintiff in coming in contact with the appliances voluntarily and unnecessarily or negligently exposed himself to danger."

■ Assuming for the purposes of this appeal that the defendant was guilty of negligence in the maintenance

of its wires, as alleged, we have concluded that the accident was due solely to the decedent's contributory negligence, and that no other inference could be reasonably drawn from the undisputed facts.

It appears that the decedent was an intelligent man with 17 years experience as a roofer, and that he was in charge of the job installing the new guttering; that he not only knew of the location of the wires, but was cognizant of their danger, as indicated by his helper Thomasson, who testified that when the decedent was about halfway up the ladder with the new guttering on his right shoulder he said to Thomasson who was on the roof removing the old guttering, "Watch them wires," and that Thomasson replied, "You better be the one to watch them, cowboy."

Despite decedent's knowledge of the presence and danger of the wires, on reaching the top of the ladder, which was 2 feet lower than the top of the parapet, he moved his body to the right, and while facing south or the rear of the building, he tilted the southern end of the guttering downward and started pushing it backward from his right shoulder over the parapet, which action continued until the northern end of the guttering made contact with the wire from which he received the deadly shock. His action in not looking in the direction in which he was pushing the guttering was inexcusable, and it is difficult to conceive how any adult person would be so careless and indifferent to possible consequences. Under the circumstances, it is apparent that the decedent knowingly placed himself in a position of danger, and we think his failure to exercise ordinary care for his own safety was the sole and proximate cause of his death.

■ In applying the rule of contributory negligence, the Court, in Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S. W. 804, 806, said:

"If, notwithtsanding defendant's fault, plaintiff's negligence so continued and contributed to the accident, then either the negligence of the parties was concurrent, or else the plaintiff himself is to be held as having had the opportunity of avoiding the injury, and his contribution is, in either event, not remote in the chain of causation. Barr v. [Southern] Railroad Co., 105 Tenn. [544] 545, 58 S. W. 849; Seith v. Commonwealth [Electric] Co., 241 Ill. 252, 259 89 N. E. 425, 24 L. R. A., N. S., 978, 132 Am. St. Rep. 204, 208; [Memphis St.] Railroad Co. v. Roe, 118 Tenn. 601, 609, 102 S. W. 343.

"What is meant by 'proximate cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in casual relation, rather, is the meaning. Notes to Gibson v. Delaware, etc., Canal Co., 36 Am. St. Rep. 811; Barr v. [Southern] Railroad Co., supra; Rosenbaum v. Shoffner, 98 Tenn. [624] 630, 40 S. W. 1086, and cases cited; 13 Am. & Eng. L. (2d Ed.), 490; 7 Am. & Eng. L. (2d Ed.), 376; 29 Cyc. 491-499.

"Assuming that defendant was negligent, we are of opinion that plaintiff's negligence continued to operate concurrently at the moment of the accident in producing it; that there was no independent, self-supporting act of defendant that solely caused the injury, or so came into operation as to make plaintiff's negligence remote. * * *

"Where the plaintiff and defendant are thus guilty of acts of negligence which together constitute the proximate cause of the injury, then the negligence of plaintiff, however slight, bars a recovery. Railroad Co. v. Haynes, 112 Tenn. [712] 715, 81 S. W. 374; [Knoxville] Traction Co. v. Brown, 115 Tenn. [323] 325, 89 S. W. 319."

In Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15, it was held that where a ten year old child was struck by an automobile when she ran from behind a bus illegally stopped on a highway, her injuries were proximately caused by her negligent act independent of any negligence imputed to the bus company, which could not reasonably have foreseen or anticipated such act, thus relieving the bus company of liability.

In Gray v. Brown, 188 Tenn. 152, 217 S. W. (2d) 769, 772, it was held that the act of the plaintiff, Mrs. Brown, in attempting to close the door of a fast moving cab was negligent, and that "her negligence was not contributory but was the sole, proximate and efficient cause of her injuries."

In the comparatively recent case of Johnson v. Johnson City, 292 S. W. (2d) 794, 798, this Court in an opinion by Judge Hale, held that personal injuries sustained by the plaintiff when a television testing antenna which he was raising came in contact with an uninsulated 7200 voltage wire, might have been avoided had he been exercising ordinary care for his own safety; that "The only conclusion to be drawn from the evidence is that the plaintiff was guilty of negligence in the way and manner he directed and handled this operation."

Other cases supporting the above rule might be cited, but we think that the foregoing authorities are sufficient.

It results for reasons indicated, that the learned trial judge should have sustained the defendant's motion for a directed verdict on the first trial of the case. Accordingly, the judgment below will be reversed and the case will be dismissed at plaintiff's costs.

McAmis, P. J., and Hale, J., concur.