**Mirt C. DAVIDSON, Jr., Administrator of the Estate of Grady Wayne Davidson, Deceased; and Sherri Rae Davidson, Plaintiffs-Appellants,**

v.

**The POWER BOARD OF the CITY OF PULASKI, Tennessee, and the City of Pulaski; Ensley Griggs and Wife, Cleo Griggs, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Dec. 7, 1984.

Application for Permission to Appeal Denied by Supreme Court Feb. 25, 1985.

Clinton H. Swafford, Swafford, Peters & O'Neal, Winchester, Pat M. Fraley, Ed Falkowski, Fayetteville, for plaintiffs-appellants.

Susan Emery McGannon, Donelson, Stokes & Bartholomew, P.A., Nashville, Jack B. Henry, Pulaski, for defendant-appellee-Power Bd.

## OPINION

TODD, Presiding Judge.

Plaintiff, Mirt C. Davidson, Jr., Administrator, sued the defendants, The Power Board of the City of Pulaski, the City of Pulaski, Ensley Griggs and wife, Cleo Griggs for wrongful death of Grady Wayne Davidson by electrocution which occurred when deceased was assisting in erection of a television antenna which came in contact with a high voltage wire erected and maintained by the Power Board on the property of Mr. & Mrs. Griggs. The case as to the Power Board was heard without a jury under the Governmental Tort Liability Act and dismissed. This partial judgment was duly entered as a final judgment under TRCP Rule 54.02, and plaintiff appealed.

Appellant presents two issues for review as follows:

I. Whether, by a preponderance of the evidence, the power board was grossly negligent in that, using an unregistered engineer, and relying on an inapplicable national electric safety code provision, it designed, constructed and maintained the power line 2½ feet lower than required by the code.

II. Whether, by a preponderance of the evidence, Grady Wayne Davidson was proximately contributorily negligent, where there was no evidence that he was aware of the presence of the overhead power line, or that it was an uninsulated, high voltage electric power line.

On July 6, 1981, a Mr. Jeff McGill undertook to re-erect an antenna pole which had fallen. He planned to lift the pole and insert it into metal bands attached to a wooden post already set in the ground. The deceased, who lived nearby, volunteered to assist Mr. McGill in the work. As the pole was lifted by both men, the antenna attached to the pole came in contact with a 7200 volt uninsulated wire of the Power Board, and the deceased was electrocuted.

The Trial Judge found that the Power Board was not guilty of violating The National Electric Safety Code or the State Electrical Safety Code, TCA § 68–16–104, or TCA §§ 62–2–101 relative to licensure of engineers, that the Power Board was not guilty of gross negligence but was guilty of ordinary negligence and that the deceased was contributorily negligent. Accordingly, the Board was dismissed.

Appellant insists that the Board was guilty of "negligence per se" by constructing its power line 2½ feet below the height required by the National Code. The Code contains a table which purports to state minimum permissible height of electric wires under various conditions. The applicable column of such heights is for wires carrying 750 to 15,000 volts. Within said column, the following heights are listed:

Where wires cross over:

1. Public Streets, alleys or roads in urban or rural districts—20 feet

2. Driveways to residence garages—20 feet

3. Spaces or ways accessible to pedestrians only—15 feet

Where wires run along or within the limits of public highways or other public rights of way for traffic:

4. Streets or alleys in urban districts—20 feet

5. Roads in rural districts—18 feet

The parties agreed that .887 feet should be added to the above minimum height to compensate for temperature and spacing of support poles.

The parties differed as to the Code minimum because of a disagreement as to the classification of the ground surface over or across which the subject wire was suspended. Plaintiff insisted that situation no. 1, above, and a consequent minimum height of 20 feet (plus .887) was applicable. Defendant insisted that situation no. 3, above, and a consequent minimum height of 15 ft. (plus .887) was applicable.

The critical materiality of the difference is created by the fact that the antenna pole was *16* feet 2 inches long, the top band on the wood post was 5½ feet above the ground, the post was located at a point 7 feet from a point directly under the power line where the ground surface was 1.33 feet below the ground under the power line which was 18 feet 4½ inches from the ground. Considering the measurements just given, it was shown that, as the pole was inserted into the top band of the post, the top end of the pole would be 18.74 feet above the ground under the power line. Accepting this conclusion, the antenna pole or its attached antenna was likely to touch a power line 18.74 feet above the ground, but not a power line 20.887 feet above the ground.

Russell Jackson, a private forensic electrical engineer, testified for the plaintiff that the proper category of the situation of the power wire was no. 1, above, because the road was open to the public and the duty of the Power Board is no less in respect to a private road open to the public than in respect to a road belonging to the public. He also testified that the situation was covered by category no. 2, above, despite the absence of garages. He denied that category 3, above, was applicable because mobile homes were present at the scene and that they were vehicles. Based upon his foregoing assumptions, he testified that the wire was 2.51 feet too low and did not conform to the "spirit" of the Code. Mr. Jackson also testified that the "road" over which the power line was hung was 9 ft. 4 inches wide, that it consisted of scattered gravel which had been pressed down by vehicular traffic into two parallel "tracks".

Jim Kelly, a private consulting engineer presented by the Board, stated that the road did not fall within any of the above listed classifications except no. 3. He rejected category no. 2, above, because no garage was served by the road. He rejected categories 4 and 5 because the road was not a public road, but was a private drive. He stated that proper height of the wire under the circumstances was 15.887 feet and that its actual height was 2.48 feet above this requirement. He further testified that, in event none of the situations in the table were applicable, then Sections 210 (15a) and 200 (15a) of the Code requiring "accepted good practices" would be applicable and that the height of the wire did conform to "accepted good practices".

Elbert Powell, operating superintendent of the Lawrenceburg Power Company, testified that he was familiar with the National Code and the practices of utilities in the area, that the wire in question would be classified as being "over a yard or beside a driveway", and that he would place it in the category of "Spaces or ways accessible to pedestrians only" because the wire does not "cross over" a driveway and the stated category is the only one which correctly describes the location. He further testified that any height over 15 feet would be "good practice" for that location.

James Hannah, superintendent of the Board's electric system, testified that the line was erected in 1976 at the request of

the property owners for serving mobile homes on the property, that the design for the line was prepared by a graduate engineer in accordance with the National Code and approved by the chief engineer of the Board who was a graduate engineer, but that neither of said engineers was a "registered engineer". Mr. Hannah further testified that the determination of the height of the line was made from the provisions of the National Electric Code for "spaces or ways accessible to pedestrians only".

■ This Court respectfully disagrees with the finding of the Trial Judge that the required height of the wire was determined by the classification, "where wires cross over" public streets or driveways. The reason for this is that this record does not show the existence of a road or driveway at the time of the construction of the power line in 1976, nor does it show any notice to the Power Board of the construction or existence of a road or driveway thereafter so as to create a duty to adjust the height of the wire. So far as this record shows, the power line was constructed across an open field prior to its use for any residential purpose. Also, the record does not show that the power line "crosses" the present driveway or road. So far as the record shows, the line runs parallel to a private road, on private property.

Under this record, the correct finding, as of the erection of the wire, was that it crossed an area accessible to pedestrians only, i.e. an area not involving a road or driveway.

■ This Court does not agree that, by relying upon two graduate electrical engineers in its employ the Board became liable because the engineers were not "registered" as required by TCA § 62-2-101. In the first place, if there was no defect or inadequacy in the power line resulting from the failure of the engineers to "register", then the failure to register was not a proximate cause of the subject tragedy. In the second place, this Court does not regard the salaried employment of an unregistered graduate engineer by a power system to design and supervise the system as being a violation of TCA 62-2-101 which obviously refers to engineers who do work for the public at large.

Accordingly, this Court finds that there is no evidence to support a finding that the tragedy was the proximate result of negligence of the Power Board.

■ Plaintiff cites *Phelps v. Magnavox Co. of Tennessee* 62 Tenn.App. 578, 466 S.W.2d 226 (1970). In that case, the Power Board had erected a wire 68 inches above a roof, and a roofer was electrocuted when his mop handle contacted the wire. This Court reversed a directed verdict holding that a jury could reasonably find that the Power Board should have anticipated that persons would be working on the roof. In the present case, it cannot be reasonably said that the Power Board should have anticipated that a person would be erecting a television antenna of such a height as would touch the power line.

Plaintiff also cites *Martin v. Town of McMinnville*, 51 Tenn.App. 503, 369 S.W.2d 902 (1962). In that case, the deceased touched a high voltage wire while measuring a roof for the installation of a gutter. The wire was 65 inches above the roof and the defendants had been notified of the dangerous condition and were to have corrected it, but did not. This Court affirmed a verdict for the plaintiff, holding that the issue of negligence or gross negligence was for the jury under the evidence. In the present case, there is no evidence of the installation of a wire in an obviously dangerous location or failure to move it after notice of the danger.

■ As observed in *Odum v. Haynes*, Tenn.App. 1972, 494 S.W.2d 795, this Court finds no evidence in this record of any conduct of the Power Board constituting gross negligence, that is with conscious or reckless disregard for the rights and safety of the deceased.

■ Plaintiff urges that the Board was guilty of gross negligence by violation of a statute, which is negligence *per se*. Violation of a statute is negligence *per se*,

but it is not a proximate cause of the injury unless causal connection is shown. Likewise, violation of a statute, though negligence *per se* is not gross negligence unless the violation occurred under such circumstance as to evidence a reckless disregard of safety of others under the circumstances.

There is no showing that negligence, if any, of the Board, per se or otherwise, occurred under such circumstances as to constitute gross negligence.

The Trial Court found that the deceased was guilty of contributory negligence, holding that the deceased knew or should have known of the presence and danger of the power line. Plaintiff insists that the attention of the deceased was focused on the portion of the pole which he was handling so that he could not watch the movement of the antenna on the opposite end of the pole. However, the issue is not so much where deceased should have been looking at the time of contact with the wire, for he was not in sole control of the pole and antenna.

The controlling factors as to the negligence of deceased were knowledge of presence of the danger and voluntarily undertaking the activity in the presence of the danger without assuring that it could be pursued without injury.

Since the deceased lived in close proximity to the scene, it may reasonably be inferred that he knew that electric power lines were present in the vicinity. While the Trial Court stated that there was no evidence that the deceased was actually aware of the dangerous presence of the power line, the Trial Court found that he knew or should have known of its presence. This being true, it was permissible for the trier of fact to find that deceased should have specifically looked for the wire and made sure that the work could be done in safety. As found by the Trial Court, he was in position to do so. Therefore he should have done so. The finding of the Trial Court as to contributory negligence comes to this Court for review de novo, but

with a presumption of correctness unless the evidence preponderates otherwise. TRAP Rule 13(d). The evidence does not preponderate otherwise.

Plaintiff cites *City of Elizabethton v. Sluder*, Tenn. 1976, 534 S.W.2d 115, wherein a jury found for the plaintiff who was injured when his 20 foot shovel touched a utility wire. The Supreme Court approved the verdict, but said:

II.

[1] This controversy is extremely close on the facts. It was ably and energetically tried, exceptionally well briefed and forcefully argued at the bar of this Court—all in the finest tradition of the trial bar. We are frank to state that the record would have provided ample basis for a defendant's verdict and we would not have disturbed it on appeal. At the same time it supports the verdict in favor of the plaintiffs and, irrespective of our personal view as an initial proposition, we cannot justify vitiating the verdict of the jury.

[2] It will be borne in mind that in a case involving a jury verdict, approved by the trial judge and affirmed by the Court of Appeals, our review is limited to a determination of whether there is material evidence to support the verdict. (534 S.W.2d at 116).

The cited decision does not require this Court to reverse the finding of the Trial Judge in the present case.

Plaintiff cites *International Harvester Co. v. Sartain*, 32 Tenn.App. 425, 222 S.W.2d 854 (1948), wherein this Court held that whether the injured party was chargeable with knowledge of the presence of a power line was a question for the jury. The same issue in the present case was for the Trial Judge, sitting without a jury. He decided that issue against the plaintiff, and this Court is not justified in reversing his decision for the reasons already stated.

Plaintiff cites *Null v. Electric Power Board*, 30 Tenn.App. 696, 210 S.W.2d 490, 492 (1948), wherein this Court reversed a

directed verdict for the defendant. The statement attributed to this Court by plaintiff related to discovery of danger by the workmen of the *defendant,* not the injured party.

Plaintiff cites *Guess v. Light, Gas & Water Div. of City of Memphis,* 55 Tenn. App. 558, 403 S.W.2d 115 (1965), wherein this Court reversed a directed verdict on the ground that the injured plaintiffs were charged with knowledge of the wires. The plaintiffs were painters on a construction project, did not reside in the vicinity, and did not deliberately cause their ladder to contact the wires; it accidentally fell against them. In the present case there was no ruling of contributory negligence as a matter of law, but as a matter of fact by the finder of fact.

Plaintiff cites *Martin v. Town of McMinnville,* supra, wherein the jury, under the circumstances of that case found that the plaintiff was not guilty of contributory negligence. In the present case, the finder of fact has found the deceased guilty of contributory negligence.

Plaintiff cites *Coatney v. Southwest Tennessee Electric Membership Corp.,* 40 Tenn.App. 541, 292 S.W.2d 420 (1965), in which this Court reversed a directed verdict for the defendant because of jury issues as to negligence of defendant. No verdict or judgment for the plaintiff was involved in that appeal.

 Plaintiff insists that the negligence of deceased was not a proximate cause of his injury. *If* deceased knew or should have known of the presence of the wire, and *if* deceased should have made sure that the pole he was lifting was not likely to touch the wire, and *if* deceased failed to do so, but joined in lifting the pole to the point where it touched the wire, then such negligence of deceased could reasonably be determined to be a proximate cause of his injury. Having found the above conditions existed, the finder of fact was justified in finding that the negligence of deceased was a proximate cause of his injury.

*Dush v. Fitzhugh,* 70 Tenn. (2 Lea) 307 (1899), cited by plaintiff, is not controlling because the Supreme Court affirmed a finding of fact by the Trial Court. It is not controlling in the present case, because it involved a failure to see an open hatchway in a floor, whereas, under the facts as found by the Trial Judge in this case, the deceased voluntarily undertook an unusual task in respect to an unusual object in the presence of a danger of which the Trial Judge found he knew or should have known.

This Court is satisfied that the finding of fact by the Trial Judge that the negligence of deceased proximately caused his injury is supported by the evidences and inferences reasonably arising therefrom, and that the evidence does not preponderate otherwise.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against plaintiff-appellant. The cause is remanded for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

CANTRELL and KOCH, JJ., concur.