## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **RICHARD LANE DEBERRY** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | **Henderson Circuit No. 90-057** |
| | ) | |
| VS. | ) | Appeal No. 02A01-9610-CV-00257 |
| | ) | |
| **LEXINGTON ELECTRIC SYSTEM,** | ) | |
| **CENTRAL STATE BANK, and the** | ) | |
| **CITY OF LEXINGTON, TENNESSEE,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**September 15, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF HENDERSON COUNTY
AT LEXINGTON, TENNESSEE
THE HONORABLE CHARLES McPHERSON, JUDGE, BY DESIGNATION

**WILLIAM M. JETER**
**TIM EDWARDS**
**GLASSMAN, JETER, EDWARDS AND WADE, P.C.**
Memphis, Tennessee
Attorneys for Appellant

**LARRY L. CASH**
**STRANG, FLETCHER, CARRIGER, WALKER,**
**HODGE & SMITH, PLLC**
Chattanooga, Tennessee
**KEN WALKER**
**WALKER LAW OFFICE**
Lexington, Tennessee
Attorneys for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

In this governmental tort liability action, Plaintiff Richard Lane DeBerry appeals the trial court's judgment which limited DeBerry's recovery to $130,000, the maximum amount awardable under the Tennessee Governmental Tort Liability Act (GTLA). Defendant/ Appellee Lexington Electric System (LES) cross-appeals, challenging the merits of the trial court's finding of liability against LES. We affirm.

In April 1990, DeBerry was seriously injured when he accidentally came into contact with a high-voltage power line which had been installed and maintained by LES. DeBerry was a supervisor and job estimator for DeBerry Roofing Company. At the time of his injury, DeBerry was working on the roof of Central State Bank in Lexington, Tennessee. After lunch one day, DeBerry noticed that a ten-foot-long termination bar along the roof parapet was "turned around backwards," so DeBerry picked up the bar and flipped it over. While DeBerry was in the process of flipping the aluminum bar, the bar came into contact with the power line. DeBerry's injuries from the electric shock included the loss of one arm below the elbow and the loss of part of one foot.

Prior to the accident, DeBerry knew of the existence of the power line on the side of the building, and DeBerry had worked around high-voltage power lines before. DeBerry had observed the line a few months previously when he inspected the roof to give a job estimate. DeBerry assumed that the power line was a safe distance from the edge of the roof, and, in any event, he planned to bring up materials from the back of the building away from the power line. Accordingly, DeBerry did not consider the power line to be a threat to workers, and he did not contact LES prior to beginning the roofing job.

The evidence at trial established that the power line was erected in 1939. Between 1979 and 1982, the bank building underwent renovations, including the addition of the parapet to the roof of the building. During the course of the renovations, LES offered to insulate the power line to protect people doing work on the building, but the contractor performing the renovations did not accept LES's offer. The addition of the parapet brought the roof of the building at least a foot closer to the power line. LES last performed work on

the power line in 1980 when a line pole was replaced. The line poles were inspected in 1981, and the power line itself was inspected in 1988 or 1989, approximately one or two years before DeBerry's accident.

Shortly after DeBerry's accident, measurements revealed that the horizontal clearance between the power line and the building was 3'3½" and that the vertical clearance was 7'3". The horizontal clearance was obtained by measuring from the power line to the nearest point on the plane formed by the side of the building. Similarly, the vertical clearance was obtained by measuring from the power line to the nearest point on the plane formed by the roof of the building. The actual distance between the power line and the closest point on the roof was 7'11½". Witnesses observed that the line pole nearest the bank building was leaning toward the building, moving the power line at least two feet closer to the building. An expert witness for DeBerry testified that this condition probably would have taken longer than two years to develop and, thus, should have been identified by LES during its inspection in 1988 or 1989.

At trial, a dispute arose as to which version of the National Electric Safety Code (NESC) applied and as to whether or not LES had a continuing duty to upgrade its power lines to conform to the current code version. At the time the power line was installed in 1939, the line apparently conformed to then applicable codes and standards. Over the years, however, the NESC was revised to expand the horizontal and vertical clearances required between power lines and nearby buildings. The code in effect in 1960 required a horizontal clearance of three feet. A newer version of the NESC, which took effect in 1977, required a horizontal clearance of five feet for areas considered accessible to pedestrians, such as the bank building roof which, according to the testimony, was accessible by a permanently installed ladder leading up to the roof.

LES's expert witness, Francis M. Wells, opined that the 1960 version of the NESC applied to the power line because this was the code version in effect the last time substantial work was done on the power line. This work occurred in 1971 when the power

3

line was upgraded. Wells stated that the pole replacement work done in 1980 would not have required LES to upgrade the line to conform to the 1977 code version because the pole replacement was not considered a substantial alteration to the line. Thus, LES took the position that it had no duty to upgrade its line unless it was rebuilding the line or making substantial improvements thereto.

In contrast, DeBerry's expert witness, John T. Butters, testified that the 1977 NESC applied to the power line at the time of DeBerry's accident. The 1977 code applied to all new installations, alterations, reconstructions, and extensions of power lines. In Butters' opinion, the NESC imposed a duty on LES to bring its power lines into compliance with later code versions if LES's alterations, modifications, or inspections of the lines revealed any areas of noncompliance. Specifically, in altering or inspecting its power lines, LES had a duty to review the lines' proximities to nearby structures. In accordance with this interpretation, Butters testified that the pole replacement work performed in 1981 would have required LES to bring the power line into compliance with the 1977 code. Inasmuch as the 1977 code required a horizontal clearance of five feet between the power line and the bank building, the power line in question, which had a horizontal clearance of only 3'3½", did not comply with the NESC.

Based on the foregoing evidence, the trial court entered a memorandum opinion in which it ruled in favor of DeBerry on most of the issues.[1] Specifically, the trial court found that the 1977 version of the NESC applied in this case; that the power line did not comply with the NESC's clearance requirements; that LES had both actual and constructive notice of the dangerous condition caused by its power line; and that LES was negligent in failing to maintain the line. Applying comparative negligence principles, the trial court determined that LES's comparative fault was seventy percent (70%) and that DeBerry's fault was thirty percent (30%). The trial court found DeBerry's damages to be $650,000, but concluded that DeBerry's recovery was limited by the statutory amount of $130,000.

---

[1]DeBerry's complaint also named the City of Lexington and Central State Bank as defendants; however, both of these defendants were dismissed from the lawsuit prior to trial.

On appeal, DeBerry presents the following issue for this court's review:

> Whether a recovery under the [GTLA] is limited to the sum of $130,000.00 when the governmental entity has purchased insurance in an amount sufficient to fund the full amount of the judgment.

On cross-appeal, LES has raised the following additional issues:

A.    [Whether the] Court Erred in Denying the Motion to Dismiss made by LES at the Close of Plaintiff's Case in Chief.

B.    [Whether the] Plaintiff Lane DeBerry is guilty of comparative fault equal to or greater than the fault of LES.

We first address LES's substantive issues regarding its liability for DeBerry's injuries. Regarding its first issue, LES argues that the trial court erred in denying its motion to dismiss because DeBerry failed to present evidence that LES had actual or constructive notice of a dangerous or defective condition as required by section 29-20-204 of the GTLA and, alternatively, because LES was immune from suit under section 29-20-205(4) of the GTLA.

The GTLA removes a governmental entity's immunity from suit "for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." T.C.A. § 29-20-204(a) (1980). In order to prevail under this section, the plaintiff must prove that the governmental entity had "constructive and/or actual notice" of the dangerous or defective condition. T.C.A. § 29-20-204(b) (1980); see, e.g., Lee v. City of Cleveland, 859 S.W.2d 347 (Tenn. App. 1993); Smith v. City of Covington, 734 S.W.2d 327 (Tenn. App. 1985), aff'd, 1987 WL 12494 (Tenn. June 22, 1987).

In the present case, we conclude that DeBerry presented sufficient evidence from which the trial court could have found that LES had actual and/or constructive notice of the dangerous condition of the power line. See McGaughy v. City of Memphis, 823 S.W.2d 209, 215 (Tenn. App. 1991). The evidence showed that LES inspected the line in 1988

5

or 1989, when it should have been apparent that one of the nearby poles supporting the power line was leaning toward the bank building and that the resulting horizontal clearance between the power line and the building was only about three feet. LES's knowledge of this dangerous condition was further supported by the testimony of LES's own witness, who indicated that, when the bank building was remodeled sometime between 1979 and 1982, LES offered to insulate the line to protect people working on the building.

We also conclude that the trial court properly rejected LES's claim of immunity under section 29-20-205 of the GTLA. Section 29-20-205, which generally removes a governmental entity's immunity from suit for injuries caused by its negligence, does not remove immunity if the injury "[a]rises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." T.C.A. § 29-20-205(4) (1980); see, e.g., Johnson v. EMPE, Inc., 837 S.W.2d 62 (Tenn. App. 1992) (dismissing cause of action which was based on city's failure to inspect sewer project); Mowdy v. Kelly, 667 S.W.2d 489 (Tenn. App. 1983) (dismissing action which was based on county's failure to inspect bridge). Citing section 29-20-205(4), LES contends that its immunity was not removed in this case because DeBerry's cause of action was predicated on LES's negligent inspection of the power line.

In our view, LES's argument misconstrues the nature of the evidence presented by DeBerry. The evidence that LES inspected the power line in 1988 or 1989 was introduced, not to show that LES failed to inspect the line or that it negligently inspected the line, but to show that LES had actual or constructive notice of the line's dangerous condition by virtue of its inspection. Stated another way, DeBerry's theory of recovery in this case was based, not on evidence that LES performed a negligent inspection of the power line, but on evidence that LES conducted an adequate inspection of the line in 1988 or 1989, at which time it observed the line's dangerously close proximity to the bank building but failed to take action to correct the danger. Moreover, we note that evidence of the 1988 or 1989 inspection was not the only evidence introduced to support DeBerry's theory of actual or

6

constructive notice because, as previously indicated, other evidence established that LES had offered to insulate the power line sometime between 1979 and 1982.

As for LES's second issue, LES contends that DeBerry was barred from recovery because his own negligence was equal to or greater than that of LES and because DeBerry was guilty of negligence per se when he violated the terms of Tennessee Code Annotated sections 68-103-102 and 68-103-105. Inasmuch as this case was tried by the court below sitting without a jury, this court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case de novo. Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 865 (Tenn. App. 1985); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297, 300 (Tenn. App. 1984); T.R.A.P. 13(d). In conducting a de novo review of the record below, however, this court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. Roberts, 692 S.W.2d at 865.

Applying the foregoing standard, we affirm the trial court's decision establishing seventy percent (70%) as LES's comparative fault for DeBerry's injuries. LES contends that DeBerry was negligent because he knew of the existence of the power line, was aware of the danger to anyone who came into contact with the line, and failed to exercise due care to avoid contact with the line. We conclude, however, that the trial court properly considered these arguments when it assigned thirty percent (30%) as DeBerry's comparative fault for the accident. We further conclude that the decision in City of Chattanooga v. Shackleford, 298 S.W.2d 743 (Tenn. App. 1956), cited by LES, is distinguishable from the present case because Shackleford was decided at a time when any contributory negligence on the part of the plaintiff barred him from recovery. Id. at 746.

We likewise decline to disturb the trial court's determination that the provisions of section 68-103-102 and 68-103-105 have no application to this case. Those sections provide that

> No person, firm, or corporation, or agent of same, shall require or permit any employee to perform any function in proximity to high-voltage lines; . . . unless and until danger from accidental contact with such high-voltage lines has been effectively guarded against in the manner hereinafter prescribed.

and that

> When any operations are to be performed, tools or materials are to be handled, or equipment is to be moved or operated within six feet (6') of any high-voltage line, the person or persons responsible for the work to be done shall promptly notify the operator of the high-voltage line of the work to be performed, . . . before proceeding with any work which would impair the aforementioned clearance.

T.C.A. §§ 68-103-102, 68-103-105 (1983). LES contends that these sections imposed a duty upon DeBerry to contact LES before beginning any roofing work on the bank building.

This provision was not intended to relieve a company transmitting deadly energy through uninsulated wires from the consequences of its negligence, but it was designed merely as an additional safety measure. Martin v. Town of McMinnville, 369 S.W.2d 902, 906 (Tenn. App. 1962). DeBerry did not anticipate that operations or equipment would be within six feet of a high-voltage line in that he had planned to bring up materials from the back of the building away from the power line. We are in agreement with the trial court that these sections are inapplicable to the facts of this case.

Having addressed the substantive issues raised by LES on cross-appeal, we now turn to the initial issue presented by DeBerry's appeal, that of whether the trial court erred in limiting DeBerry's recovery in this case to $130,000 when LES had purchased insurance coverage in an amount sufficient to fund the $650,000 in damages as found by the trial court. In accordance with this court's decision in Coburn v. City of Dyersburg, 774 S.W.2d 610 (Tenn. App. 1989), we answer this question in the negative and affirm the trial court's judgment.

8

Section 29-20-403 of the GTLA establishes minimum limits of $130,000 "for bodily injury or death of any one (1) person in any one (1) accident, occurrence or act." T.C.A. § 29-20-403(b)(2)(B) (Supp. 1989). Section 29-20-311 prohibits any judgment or award in excess of the minimum amounts of insurance coverage specified in section 29-20-403, "unless such governmental entity has secured insurance coverage in excess of said minimum requirements." T.C.A. § 29-20-311 (1980).

The government's procurement of excess insurance coverage, however, does not end the inquiry. Before a plaintiff may recover a judgment in excess of the minimum limits, section 29-20-404 imposes another requirement: The governmental entity must have expressly waived the minimum limits of liability and such waiver must be contained in the entity's insurance policy. As pertinent, section 29-20-404 provides:

> A governmental entity or the insurer of such governmental entity shall not be held liable for any claim arising under state law for which the governmental entity has immunity under the provisions of this chapter unless the governmental entity has expressly waived such immunity. A governmental entity or the insurer of such governmental entity shall not be held liable for any judgment in excess of the limits of liability set forth in § 29-20-403, unless the governmental entity has expressly waived such limits. The waiver of such immunity or such limits of liability by a governmental entity shall only be valid if such waiver is expressly contained in the provisions or endorsement of a policy or contract of insurance authorized by this chapter to cover its liability under this chapter.

T.C.A. § 29-20-404(a) (Supp. 1989) (emphasis added).

In Coburn v. City of Dyersburg, 774 S.W.2d 610 (Tenn. App. 1989), this court construed the foregoing sections of the GTLA:

> The logical and reasonable reading of these three Code sections seems to us to be as follows: For the bodily injury or death of any one person in any one accident, § 29-20-403 establishes minimum limits . . . ; a judgment rendered against a governmental entity may not exceed the minimum amounts of insurance coverage specified in § 29-20-403 unless the insurance coverage is in excess of the minimum requirements; and finally, the governmental entity or its insurer will not be held liable for any judgment in excess of the § 29-20-403 limits of liability unless it has waived those limits in accordance with the provisions of § 29-20-404.

Coburn, 774 S.W.2d at 613. Inasmuch as the City of Dyersburg and Dyersburg Electric System had not waived their limits of liability, this court held that the plaintiff's recovery was limited to the minimum limits set forth in section 29-20-403.

In the present case, it was undisputed that LES had secured insurance coverage in excess of the minimum requirements of section 29-20-403. The trial court found, however, and the parties do not dispute, that the insurance policies in question contained no specific language waiving LES's limits of liability. We conclude, therefore, that the resolution of this issue is governed by Coburn and that DeBerry's recovery was limited to the minimum requirements set forth in section 29-20-403. Coburn, 774 S.W.2d at 613; accord Goff v. Howell, No. 01A01-9401-CV-00024, 1994 WL 317542, at *2 (Tenn. App. July 6, 1994) ("To waive either the immunity or the limits of liability the governmental entity must do so expressly, and the waiver of either will be valid only if it is expressly contained in a policy of insurance covering the liability."); REN Corp. v. Metropolitan Nashville Airport Auth., No. 01A01-9104-CV-00123, 1992 WL 17896, at *2 (Tenn. App. Jan. 29, 1992) ("[T]he existence of insurance coverage in excess of [the minimum] limits does not constitute an express waiver of immunity."), perm. app. denied (Tenn. May 4, 1992).

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed one-half to the Plaintiff and one-half to the Defendant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

10

_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.